754 F.2d 2
 CARIBBEAN INSURANCE SERVICES, INC., Plaintiff, Appellant,
v.
AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA,
Defendant, Appellee.
CARIBBEAN INSURANCE SERVICES, INC., Plaintiff, Appellee,
v.
AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA,
Defendant, Appellant.
 Nos. 84-1491, 84-1552.
 United States Court of Appeals,
First Circuit.
 Argued Nov. 5, 1984.
Decided Jan. 16, 1985.
As Amended Feb. 22, 1985.
Rehearing Denied March 6, 1985.
 
 Jerome Murray with whom Federico Ramirez-Ros, Carlos G. Latimer, Robert Post and Ramirez, Latimer & Biaggi, San Juan, P.R., were on brief for Caribbean Insurance Services, Inc.
 Pedro J. Santa-Sanchez, Hato Rey, P.R., with whom Carlos E. Jimenez and O'Neill & Borges, Hato Rey, P.R., were on brief for American Bankers Life Assur. Co. of Florida.
 Before CAMPBELL, Chief Judge, COFFIN, Circuit Judge, and WYZANSKI,* Senior District Judge.
 LEVIN H. CAMPBELL, Chief Judge.
 
 
 1
 Plaintiff Caribbean Insurance Services, Inc. ("Caribbean") brought suit under diversity jurisdiction in the United States District Court for the District of Puerto Rico against defendant American Bankers Life Assurance Co. ("American"). The complaint alleged breach of contract and tort claims[1] arising out of a "General Agent's Agreement" between the parties. The district court dismissed the action after defendant filed a motion for summary judgment arguing that the agreement was void due to plaintiff's failure to obtain a general agent's license from the Commissioner of Insurance of Puerto Rico. Defendant's counterclaim was also dismissed. We affirm.
 
 
 2
 On August 28, 1979, Caribbean, an insurance corporation organized under the laws of Puerto Rico, entered into a seven-page written contract with American, a Florida insurance corporation, whereby American appointed Caribbean, and Caribbean accepted appointment, as an "exclusive Puerto Rican General Agent" to perform various services "in accordance with the rates, rules and regulations of the Commonwealth of Puerto Rico." The general agent's authority was limited to Puerto Rico and to a certain category of insurance, i.e., credit life and health insurance covering individuals who borrow money from small loan companies and consumer retail sales entities.
 
 
 3
 The agreement was entitled "General Agent's Agreement" and the term "general agent" appeared more than 60 times throughout its text. Among other obligations, Caribbean undertook, as an independent contractor, to recommend "subagents"[2] for appointment; to solicit, procure and transmit applications and premiums on behalf of American for diverse kinds of insurance; to countersign individual policies as "agent" of American; to require any and all "agents or subagents" to provide evidence of their qualifications on a yearly basis; and, generally, to represent the company in all matters within the scope of its authority as a general agent and to "serve the company in the capacity of General Agent." The parties agreed that the contract would be governed by the laws of the Commonwealth of Puerto Rico, and that "all license fees required of the General Agent under statutes, rules or regulations of the Commonwealth of Puerto Rico" would be paid for by Caribbean. The contract provided that it could be altered or amended only in writing, by a document signed by both parties, and that misunderstandings as to the interpretation or application of any provision of the agreement would be submitted to arbitration. Except for an amendment on October 30, 1979, that is not here material, no written amendment was ever made.
 
 
 4
 Caribbean performed various services for American in Puerto Rico, receiving commissions until April 6, 1982, when American terminated the contract "for other than cause" relying on a contract provision which gave it that power. This provision states that upon termination "for other than cause," full commissions shall be paid to the General Agent for a year, and one-half commissions for eight years thereafter.
 
 
 5
 On June 21, 1982, Caribbean brought the present action against American in the district court, claiming damages of $30,000,000. Caribbean alleged the existence of a "general agency" relationship between the parties by virtue of the aforesaid agreement of August 28, 1979, which it annexed to its complaint, claiming that it had acted as "exclusive general agent of defendant" in the issuance of insurance policies covering the borrowers of several small loan companies doing business in Puerto Rico. Caribbean further alleged that, after gaining a foothold on the Puerto Rico market through Caribbean, American had conspired with companies to deflect Caribbean's business to other local insurers, afterwards selling them reinsurance. In this way, it was said, Caribbean had been gradually phased out until, as a final step, its contract was terminated without cause. This course of conduct was said to have reduced the commissions and compensatory payments to which Caribbean would otherwise have been entitled under the contract. Causes of action were alleged for breach of contract, tort, and violation of Puerto Rican Law 75 of June 25, 1964, as amended, P.R. Laws Annot. tit. 10, Secs. 278 et seq. (1976).
 
 
 6
 After Caribbean sued, American gave a new notice of termination of the contract, this time for cause. After preliminary skirmishing, including an appeal to this court on an unrelated issue,[3] the parties held a pretrial conference on November 2, 1983. At this time Caribbean sought and received permission, over defendant's objection, to amend its complaint to allege, "[t]hat during all the times mentioned in the Complaint, Plaintiff was duly authorized and licensed to act as Defendant's agent in accordance with its written agreement with defendant." (Emphasis supplied.) The trial was set for December 8, 1983.
 
 
 7
 On November 14, 1983, American filed an answer to the amended complaint asserting that Caribbean was not duly licensed as a general agent under the laws of the Commonwealth of Puerto Rico in accordance with the agreement of August 28, 1979, and that therefore the appointment of plaintiff as general agent was and is null and void pursuant to Article 3.340(4) of the Insurance Code of Puerto Rico, P.R. Laws Ann. tit. 26, Sec. 334(4). American also filed a counterclaim against Caribbean for the reimbursement of all the commissions previously paid under the contract.
 
 
 8
 On November 18, 1983, American filed a motion for summary judgment seeking dismissal of Caribbean's complaint. American contended in its motion that, being unlicensed, plaintiff "cannot seek any redress for termination of a null appointment." The motion was supported by a certification from the Commissioner of Insurance of Puerto Rico, stating that Caribbean had never been licensed as American's general agent, and by a copy of the General Agent's Agreement.
 
 
 9
 Caribbean filed its opposition to this motion on December 2, 1983, alleging, inter alia, that the contract was not void as a result of the lack of a license, that there was "substantial compliance" with the law because Caribbean possessed an "agent's" license, and that American was estopped from raising the lack of a general agent's license because it had failed to notify the Commissioner of Insurance, through the proper official forms, of its appointment of Caribbean as general agent, as required by the law before a license could be issued. Caribbean did not dispute that it had never been licensed as a general agent.
 
 
 10
 On December 6, 1983, American replied to Caribbean's opposition, submitting an affidavit by Seymour Shandelson, vice-president of American, in further support of its motion for summary judgment. In his affidavit, Shandelson asserted that during the relevant years, American had executed several preprinted licensing forms furnished by Caribbean, which Caribbean had represented to American were the appropriate general agent licensing forms of the Office of the Commissioner of Insurance. These forms, he stated, were never thereafter filed by Caribbean in the Commissioner's office. Shandelson also testified that the Commissioner of Insurance had been given informal notice of Caribbean's appointment through a letter, and through a copy of the General Agent's Agreement sent to his office by American. He insisted that "[i]f plaintiff was never duly licensed by the Office of Commissioner to act as defendant's General Agent in Puerto Rico it was not because of any omission of American Bankers, inasmuch as American Bankers promptly filled out and executed all licensing forms furnished by plaintiff to defendant." Caribbean filed an opposition to the reply on December 7, 1983, together with a motion to strike the Shandelson affidavit as untimely, but did not file a counter-affidavit.
 
 
 11
 On December 8, 1983, the date the trial was scheduled to begin, the district court held a hearing on the merits of defendant's motion for summary judgment and on plaintiff's motion to strike the Shandelson affidavit. During this proceeding plaintiff asserted that the word "general" in the agreement was inconsequential, and that the parties had intended only that plaintiff act as defendant's "agent," a role for which defendant had always been properly licensed. Plaintiff contended that, inasmuch as the intention of the parties with respect to the contract was in controversy, summary judgment was improper. It also moved orally to amend its pleadings again to reflect this new theory. The district court ignored the latter request, granting instead defendant's motion for summary judgment. In a decision announced from the bench, the district court dismissed Caribbean's action, holding that the contract was void on account of plaintiff's failure to be licensed. Plaintiff's motion to strike the Shandelson affidavit was denied. The district court also denied defendant's counterclaim on the ground that reimbursement of commissions already paid under the contract would constitute unjust enrichment. The court later issued a comprehensive memorandum opinion confirming and explaining its bench rulings. Final judgment was entered on December 30, 1983.
 
 
 12
 On January 5, 1984, Caribbean moved under Fed.R.Civ.P. 60(b), 59(e) and 15 that the district court reconsider and set aside its judgment and allow Caribbean to amend its complaint. These motions were accompanied by affidavits which purported to show that there was a controversy as to the real intention of the parties with respect to the agreement. On March 9, 1984, the district court denied these motions, issuing an opinion which held, inter alia, that the new evidence did not meet the standards of either Rule 59 or Rule 60 and therefore could not be considered by the court, and that in any case plaintiff was estopped from adopting a theory of the case inconsistent with his previous allegations. Plaintiff's counsel were chastised for their eleventh hour change of theory and for "playing fast and loose with the facts."
 
 
 13
 Plaintiff appeals from both the district court's summary judgment and a denial of plaintiff's post-judgment motions. Defendant cross-appeals from the court's refusal to award reimbursement of the commissions paid under the contract. The government of Puerto Rico has filed an amicus brief, see note 11, infra.
 
 
 14
 After careful consideration of the parties' briefs and arguments, we affirm the district court in all respects. As we generally agree with the lower court's two opinions, we affirm substantially for the reasons set out therein, and we do not repeat what was said there. However, we deal below with certain points which plaintiff has particularly pressed.
 
 
 15
 Plaintiff argues that the district court erred in granting summary judgment, claiming that there was enough evidence in the record to create an issue of fact as to the true meaning and nature of the General Agent's Agreement notwithstanding its express language. Plaintiff points to instances where, earlier in the case, defendant's agents had denied in their answers to various interrogatories and in depositions that plaintiff had been constituted a general agent or that the agreement was intended as a general agent's agreement. But we agree with the district court that it was simply too late for Caribbean on the eve of trial to repudiate its reiterated theory that it was a general agent and was suing for breach of the general agent's contract annexed to its complaint.
 
 
 16
 Plaintiff had asserted in its complaint and amended complaint that it was enforcing rights created by an agreement constituting it defendant's exclusive general agent in Puerto Rico and that it had, in effect, carried out its end of the bargain, acting as defendant's general agent until wrongfully discharged. Up to the eve of trial, plaintiff adhered consistently to this position in pleadings, motions, and other documents including a previous appeal to this court. Plaintiff even amended its complaint to assert that it was licensed as defendant's agent "in accordance with its written agreement with Defendant," i.e., with the General Agent's Agreement. Defendant's motion for summary judgment met this claim on its own terms, admitting that the parties had entered into the annexed General Agent's Agreement, but asserting that, under the statutory law of Puerto Rico, this agreement was rendered null and void because of plaintiff's failure to have obtained a general agent's license. Since plaintiff did not controvert the fact that it had never obtained the required general agent's license, it was appropriate for the district court to determine the legal effect of this omission. It was also fair that plaintiff should stand or fall on the basis of its freely chosen and frequently reiterated position.
 
 
 17
 Plaintiff contends that, when hoist by its own petard, it should have been allowed to amend its pleadings at the eleventh hour to reflect hastily contrived, new arguments, first made in response to defendant's unearthing of the licensing omission, that the contract was not really a "general agent's agreement" but an "agent's agreement." We disagree. The distinction between an "agent" and a "general agent" has important legal consequences under Puerto Rico law. Plaintiff alleged from the outset and reiterated that the contract was a "general agent's agreement" and that plaintiff was a "general agent" of American. The contract itself was entitled a general agent's agreement and said that plaintiff was to serve in that capacity. This was the contract, attached to plaintiff's complaint, on which it based its suit. It was not until the licensing requirement was raised by American, and indeed, until the day the motion for summary judgment was argued before the district court, that plaintiff said that the contract on which it was suing was different from what it had continuously alleged.
 
 
 18
 Not only was the contract attached to the complaint expressly designated as a "General Agent's Agreement," with plaintiff alluded to as a "general agent" throughout the text, but many of the duties described therein were consistent only with the broader powers assigned by the law to a "general agent"[4] instead of with those of a simple "agent."[5] In fact, the contract was careful to distinguish between "agents," "subagents" and "general agents," in various of its provisions. When Caribbean was designated to carry out functions typically assigned by the law to an "agent," i.e., in the countersigning of individual policies, the contract specified that it was to do so "as agent" of American.[6]
 
 
 19
 In these circumstances, the district court did not abuse its discretion in denying the amendment and holding plaintiff to its original theory, refusing to permit a whole new theory of liability and relief which, coming on the eve of trial, would have unfairly surprised the defendant who had already devoted much time and expense to the case as earlier framed. See Stephanischen v. Merchants Despatch Transportation Corp., 722 F.2d 922, 933 (1st Cir.1983); Serrano Medina v. United States, 709 F.2d 104, 106 (1st Cir.1983); Hayes v. New England Millwork, 602 F.2d 15, 19-20 (1st Cir.1979); Johnston v. Holiday Inns, Inc., 595 F.2d 890, 896 (1st Cir.1979); Jakobsen v. Massachusetts Port Authority, 520 F.2d 810, 813-14 (1st Cir.1975). Plaintiff was not entitled to "start a new game with new rules," Johnston, 595 F.2d at 896.
 
 
 20
 Plaintiff contends that the district court erred in refusing to strike the Shandelson affidavit. The district court, however, had discretion to accept the affidavit in these circumstances. See C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil Sec. 2719, at 6 (1983). It was filed in response to plaintiff's contention, made for the first time in its opposition to defendant's motion for summary judgment, that its lack of a general agent's license was due to defendant's own fault. We see no unfairness or abuse of discretion for the district court to allow defendant to answer a factual contention which had not been previously raised by plaintiff.
 
 
 21
 Under Puerto Rico law, moreover, it appears that even if defendant itself had negligently caused the licensing omission, defendant would not have been estopped from raising the nullity of the contract as a defense to an action on the contract. See Serra v. Salesian Society, 84 P.R.R. 311, 322 (1961); Laborde v. Eastern Sugar Associates, 81 P.R.R. 468, 472 (1959); Monserrate v. Lopes, 80 P.R.R. 476, 486-487 (1958). See also Puig Brutau, Fundamentos de Derecho Civil, vol. II-1, 304 (1976).[7] The only effect of any negligence by defendant would have been to preclude it from recovering the object tendered in performance of the contract under Art. 1258 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, Sec. 3517 (1968). Here the district court did, in fact, preclude defendant from recovering the commissions already paid.
 
 
 22
 With respect to the principal legal issue--whether the General Agent's Agreement was null and void because of plaintiff's lack of a "general agent's" license--the lower court appears to have correctly applied the law of Puerto Rico in holding the contract to have been void in the absence of such a license. P.R.Laws Ann. tit. 26, Sec. 334(4) provides:
 
 
 23
 The appointment of a general agent in Puerto Rico shall not be effective[8] unless the person so appointed is licensed as a general agent of the insurer by the Commissioner upon application and payment of the fee prescribed in section 701 of this title.
 
 
 24
 The first paragraph of the contract states that American "hereby designates and appoints" Caribbean as an exclusive Puerto Rican General Agent, and that Caribbean "hereby accepts such appointment." The rest of the contract deals with the duties Caribbean is to perform in that capacity and the terms on which it is engaged. Under the above statute this appointment could not be effective unless and until Caribbean was licensed, and, given the appointment's ineffectiveness, Caribbean could not legally perform the role which the remainder of the contract contemplated. Decisions of the Supreme Court of Puerto Rico indicate that lack of the legally required license will have the effect of rendering a contract of this nature void.[9] Compare Melendez v. Jimenez Realty, Inc., 98 P.R.R. 872, 877 (1970) (failure to obtain segregation permit from planning board would render contract for sale of parcels nonexistent); Mercedes Bus Line, Inc. v. Rojas, 70 P.R.R. 513, 516 (1949) (failure to obtain approval from the Public Service Commission precludes action for specific performance of a bus sales contract). The case of Cardona v. District Court, 62 P.R.R. 59 (1943), relied on by plaintiff, can be easily distinguished.[10]
 
 
 25
 This issue is persuasively discussed by the district court, and we can see no reason to disagree with its application of the civil law precedents of Puerto Rico. Even were the contract not "void," plaintiff's position would still be tenuous. While plaintiff argues that it was defendant's duty to secure the general agent's license, language in the agreement suggests the contrary.[11] And given the existence of section 334(4) rendering appointment of an unlicensed general agent ineffective, plaintiff's failure to secure a license was at very least a material breach such as would preclude it from recovering damages for an alleged breach by American. See P.R.Laws Ann. tit. 31, Sec. 3052 (1968).
 
 
 26
 We also agree with the district court that plaintiff's claim in tort must stand or fall on plaintiff's contract claim. Where the general agency agreement was void or unenforceable, we see no basis for recovery in tort, as the only tortious conduct lay in disruption of the relationship allegedly created by this contract.
 
 
 27
 On cross-appeal, defendant claims that the district court erred in not awarding restitution of the commissions it has already paid to Caribbean under the contract. Under Puerto Rico law, when a contract has been declared null and void, the parties have an obligation to restore to each other the things that have been the object of the contract. See P.R.Laws Ann. tit. 31, Sec. 3514 (1968). In case the object of the contract consists of services rendered by one party, the other party is obligated to compensate it, paying the equivalent value of these services. See J.M. Manresa, Comentarios al Codigo Civil Espanol, vol. VIII-2, at 869 (6th ed. 1967); Puig Brutau, Fundamentos de Derecho Civil, vol. II-1, at 312-13; P.R.Laws Ann. tit. 31, Sec. 3518 (1968). Here, defendant had an obligation to pay for the fair value of whatever services were actually rendered to it by plaintiff. We find no clear error in the district court's determination that the value of these services was equivalent to the amount of the commissions paid by defendant, absent any showing by defendant that plaintiff had not performed services equivalent in value to the commissions already paid. See Puig Brutau, Fundamentos de Derecho Civil, vol. II-1, at 312; Manresa, Comentarios al Codigo Civil Espanol, vol. VIII-2, at 869.
 
 
 28
 The judgment of the district court is affirmed.[12]
 
 
 
 *
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 Certain statutory claims were also alleged; these are not involved in this appeal
 
 
 [2]
 According to the contract, "subagent means and includes creditors agent, creditors, accounts, but such list is not exclusive and shall be construed liberally."
 
 
 [3]
 Caribbean Insurance Services, Inc. v. American Bankers Life Co., 715 F.2d 17 (1st Cir.1983)
 
 
 [4]
 The functions of a general agent are described in P.R.Laws Ann. tit. 26, Sec. 334(1) (1976):
 For the purposes of this title, a "general agent" is a person appointed by or under contract with an insurer as an independent contractor or on commission, in whole or part, with power or duty generally to supervise the underwriting and policy service operations of the insurer, to appoint agents for the insurer, and to perform such other functions as are vested in general agents by the custom of the kind or kinds of insurance transacted or type of insurer represented.
 Besides these, section 334(3) empowers general agents to solicit insurance applications, if also licensed as agents.
 
 
 [5]
 An agent is defined by the Code of Insurance of Puerto Rico as "an individual, firm, or corporation appointed by an insurer to solicit applications for insurance or negotiate insurance on its behalf, and if authorized to do so by the insurer, to effectuate and countersign insurance contracts." P.R.Laws Ann. tit. 26, Sec. 901 (1976)
 
 
 [6]
 Plaintiff's counsel contended at oral argument that the duties set out in the contract were not really the duties agreed upon by the parties, relying on the fact that Puerto Rico does not follow the parol evidence rule and that evidence of the parties' intention may be introduced to prove the extent of the obligation in some cases. See P.R.Laws Ann. tit. 31, Secs. 3471 et seq.; Merle v. West Bend Co., 97 P.R.R. 392, 399 (1969). We do not think that the principles of Puerto Rico contract law allow a party to defeat a motion for summary judgment by the mere invocation of "the parties' intention" to introduce an interpretation of a contract totally inconsistent with its clear terms. See P.R.Laws Ann. tit. 31, Sec. 3471 (evidence as to the parties' intention only proper when the terms of the contract are not clear); Marina Industrial v. Brown Boveri Corp., --- P.R.R. ----, 83 JTS 31, at 3089 (1983) (same); Luce & Co. v. Labor Relations Board, 36 P.R.R. 402, 410 (1962) (same)
 
 
 [7]
 Civil law makes a distinction between void and voidable contracts. See Millan v. Caribe Motors Corp., 83 P.R.R. 474, 484 (1961); J. Manresa, Comentarios al Codigo Civil Espanol, vol. VII-3, at 821 et seq. (6th ed. 1967). Estoppel is only available against the latter. Cf. P.R.Laws Ann. tit. 31, Sec. 3513 (1968)
 
 
 [8]
 The Spanish text provides that "el nombramiento ... no sera valido" ("the appointment ... shall not be valid")
 
 
 [9]
 This is not to say that under Puerto Rico law Caribbean was required to obtain a general agent's license before entering the contract. As the Supreme Court of Puerto Rico has made clear, the requirement of a license is a suspensive condition, in the absence of which the contract remains non-existent. See Melendez, 98 P.R.R. at 872. See also P.R.Laws Ann. tit. 31, Sec. 3042 (1968). Here, the condition remained unfulfilled because Caribbean never obtained the required license. The contract remained, therefore, void or non-existent, with Caribbean having yet to acquire any substantive rights thereunder
 
 
 [10]
 In Cardona, the Supreme Court of Puerto Rico held that a law that prohibited the hiring of employees to work over the statutorily fixed limit was solely directed against the employer. Plaintiff-employees who had contracted to work over this limit in contravention of the law, were held by the court not to be in pari delicto and thus, were not precluded from collecting wages for overtime
 
 
 [11]
 Paragraph 5 provides:
 The General Agent shall make and file all reports and returns required of him by any municipal, commonwealth, or federal statute or regulation, at the cost of the General Agent.... All license fees required of the General Agent under statutes, rules or regulations of the Commonwealth of Puerto Rico, for the privilege of transacting business in the territory as limited above shall be paid for by the General Agent.
 With this paragraph must be read the earlier portion of the agreement, paragraph 1, wherein it is stated, "The General Agent hereby accepts such appointment and agrees to perform the following services in accordance with the rates, rules and regulations of the Commonwealth of Puerto Rico...."
 While plaintiff makes the argument that under local law it was defendant's duty, as principal, to have submitted the license forms for a general agency, we find more persuasive the district court's ruling that the obligation devolved upon plaintiff, which was a Puerto Rico corporation expected to represent defendant's interests there.
 
 
 [12]
 We need not address the government of Puerto Rico's amicus brief defending the constitutionality of P.R.Laws Ann. tit. 10, Secs. 278 et seq. This issue has not been raised by any of the parties in this appeal