Jet Wine v. Bacardi Limited, et al.   CV-98-669-JM  09/13/01  P

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Jet Wine & Spirits, Inc.

   v.                                    Civil No. 98-669-JM
                                        Opinion No. 2001 DNH 167P
Bacardi Limited,
Bacardi & Company Limited and
Bacardi U.S.A., Inc.


**O R D E R**

Bacardi U.S.A., Inc. ("BUSA"), the remaining defendant in this case, moves for summary judgment, pursuant to Fed. R. Civ. P. 56, with respect to Jet Wine & Spirits, Inc.'s ("Jet Wine") claims against it for intentional interference with contractual relations and intentional interference with advantageous business relations. For the reasons articulated below, BUSA's motion (document no. 64) is granted.

Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327

(1st Cir. 1996).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] . . . may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A material fact is one that affects the outcome of the suit.  See id. at 248.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial.  See id.

In ruling on a motion for summary judgment, the court construes the evidence in the light most favorable to the non-movant, resolving all inferences in its favor, and determines whether the moving party is entitled to judgment as a matter of law.  See Saenger Org. v. Nationwide Ins. Associates, 119 F.3d 55, 57 (1st Cir. 1997).  The undisputed facts, viewed in the light most favorable to Jet Wine, are recited below.

## Background

Jet Wine is a corporation that is engaged in the business of brokering alcoholic beverages in Maine, New Hampshire and

Vermont. BUSA is a corporation that imports certain brands of alcoholic beverages and distributes those products throughout the United States. In this action, Jet Wine accuses BUSA of intentionally and improperly interfering with contractual relations between Jet Wine and two of its alcoholic beverage suppliers, Schieffelin & Somerset Co. ("Schieffelin") and Carillon Importers Limited ("Carillon").[1]

Jet Wine's Contractual Agreements

In 1996 and 1997, Jet Wine entered into three written brokerage agreements with Schieffelin, a company that distributes and sells various brand name alcoholic beverages. Pursuant to the agreements, Schieffelin appointed Jet Wine as its exclusive representative in New Hampshire, Maine and Vermont for the promotion and solicitation of orders for Schieffelin brands, including Dewar's White Label Scotch and Dewar's Ancestor Scotch

---

[1]Previously, this court rejected Jet Wine's assertion that its Complaint supported claims for intentional interference with contractual relations and intentional interference with advantageous business relations based on the theory that BUSA wrongfully interfered with a relationship between Jet Wine and Bacardi & Company Limited ("BACO"). This court also denied Jet Wine's motion to amend its Complaint in order to assert this theory of liability. See Document No. 71. Accordingly, the court rejects Jet Wine's asseverations on summary judgment that its claims arise in part out of contractual or business relations between the plaintiff and BACO.

("Dewar's"). Each of the contracts between Jet Wine and Schieffelin was to remain in effect until December 31, 1999, at which time the contract would continue indefinitely unless terminated by either party upon thirty days written notice.

In 1996, Jet Wine also entered into an oral agreement with Carillon. Pursuant to this agreement, Jet Wine became Carillon's exclusive representative in Maine for the promotion and solicitation of orders for the Bombay brands of alcoholic beverages.

The Formation of Diageo and FTC Involvement

At or about the time Jet Wine entered into the brokerage agreements with Schieffelin and Carillon, Carillon was a direct or indirect subsidiary of Grand Metropolitan p.l.c. ("Grand Met") and Schieffelin was a joint venture through which Guinness p.l.c. ("Guinness") sold Dewar's in the United States. In 1997, Grand Met and Guinness agreed to merge to form Diageo p.l.c. ("Diageo"). The proposed merger triggered the Federal Trade Commission's ("FTC") filing of a complaint against Grand Met, Guinness and Diageo asserting that the merger would have significant anticompetitive effects on the premium Scotch whiskey and gin markets in the United States.

4

In 1998, following a settlement between the parties to the FTC action, the FTC issued a Decision and Order requiring Diageo to divest itself of the Dewar's and Bombay brands ("Brands"), as well as the assets relating to those Brands. The Decision and Order provided that if the divestiture did not occur within six months after the execution of an Agreement Containing Consent Order, the FTC could appoint a trustee to complete the divestiture.

The Sale of the Brands

In compliance with the FTC order, Diageo sought bids for the purchase of the Brands. Bacardi Limited ("BL"), the parent holding company of BUSA, was one of the companies that submitted a bid. During the course of the bidding process, BL conducted due diligence with respect to the Brands. BUSA, which participated in BL's due diligence efforts, learned that Jet Wine had extended term brokerage agreements for New Hampshire, Maine and Vermont.[2]

Diageo ultimately accepted BL's final bid, and in March 1998, Diageo entered into two Asset Purchase Agreements with

---

[2] There is no evidence as to what if anything BUSA learned about the substance of Jet Wine's brokerage agreements other than the fact that Jet Wine had extended term brokerage contracts for New Hampshire, Maine and Vermont.

Bacardi & Company Limited ("BACO")[3] and William Lawson Distillers Limited ("Lawson") for the purchase and sale of the Brands.[4] The deal was fully consummated in June 1998, following FTC approval of the Asset Purchase Agreements. As a result of the FTC's order that Diageo divest itself of the Brands, and the subsequent sale of the Brands to BACO and Lawson, Schieffelin no longer held the Dewar's brand in its portfolio and Carillon no longer held the Bombay brand in its portfolio.

The Appointment of a New Broker for the Brands

After acquiring the Brands, BACO appointed BIL to be the worldwide distributor of the Brands. BIL then appointed BUSA to import and distribute the Brands in the United States. On June 15, 1998, BUSA notified Jet Wine that it was selecting another company to act as its broker for the Brands in New Hampshire, Maine and Vermont. BUSA did not provide Jet Wine with advance notice of its decision to engage an alternative broker. Moreover, the broker that BUSA chose to represent it in New

---

[3]BACO owns trademarks and intellectual property that are used in the manufacturing and sale of alcoholic beverages. BACO is a wholly-owned subsidiary of Bacardi International Limited ("BIL"), and BL owns 99.88% of BIL's stock.

[4]BACO and Lawson were selected as the Bacardi entities that would acquire the Brands based upon fiscal, financing and tax considerations.

Hampshire, Maine and Vermont directly competes with Jet Wine.

Discussion

To prove either intentional interference with contractual relations or intentional interference with advantageous business relations, Jet Wine must establish that (1) it had a contractual relationship with a third party, (2) BUSA knew of this relationship, (3) BUSA intentionally and improperly interfered with this relationship, and (4) Jet Wine was damaged by the interference.  See Montrone v. Maxfield, 122 N.H. 724, 726 (1982).  See also Preyer v. Dartmouth College, 968 F. Supp. 20, 26 (D.N.H. 1997)(a claim for intentional interference with prospective contractual relations seeks relief for the defendant's interference with an existing relationship that gives rise to a reasonable expectation of economic advantage); Demetracopoulos v. Wilson, 138 N.H. 371, 373-74 (1994)(setting forth the elements of a claim for intentional interference with contractual relations and emphasizing that defendant's conduct must be both intentional and improper).  Although the New Hampshire Supreme Court has questioned the validity of claims for intentional interference with advantageous business relations, see Clipper Affiliates, Inc. v. Checovich, 138 N.H. 271, 275

7

(1994), I assume for purposes of this Order that such claims remain prosecutable under New Hampshire law.[5]

BUSA is entitled to judgment as a matter of law on both causes of action. As the undisputed facts show, nothing that BUSA did interfered, much less intentionally and improperly interfered, with Jet Wine's exclusive distributorship agreements with Schieffelin and Carillon. The FTC's order that Diageo divest itself of the Brands and the subsequent sale of the Brands to BACO and Lawson in compliance with that order left Schieffelin and Carillon without the Brands in their portfolios and rendered Jet Wine's contracts with those suppliers unenforceable. If any third party action can be said to have interfered with Jet Wine's relationships with its suppliers, it was the FTC's action and not

_____

[5]Relying on Clipper, BUSA urges this court to reject Jet Wine's claim for intentional interference with advantageous business relations as an invalid cause of action. While the Clipper court called into question the vitality of such claims, it did not decide the issue. Moreover, since Clipper, this court has continued to assume the existence of an independent cause of action for intentional interference with prospective contractual relations. See Preyer, 968 F. Supp. at 26; Heritage Home Health, Inc. v. Capital Region Health Care Corp., 1996 WL 655793 *3 (D.N.H. 1996). In light of the relevant case law and Jet Wine's failure to establish a genuine issue of material fact that would defeat BUSA's motion for summary judgment on Jet Wine's intentional interference with prospective relations claim, I will assume for purposes of this Order the existence of such a claim under New Hampshire law.

8

BUSA's decision to appoint Jet Wine's competitor as the broker for the Brands in New Hampshire, Maine and Vermont.  Accordingly, Jet Wine has established no basis for recovery in tort against BUSA.  See Caribbean Ins. Servs., Inc. v. Am. Bankers Life Assurance Co. of Florida, 754 F.2d 2, 9 (no basis for recovery in tort where the only tortious conduct lay in the disruption of the relationship allegedly created by a contract deemed to be void or unenforceable); Barrows v. Boles, 141 N.H. 382, 392-93 (1997)(no tortious interference with rental agreements between landlord and tenants where foreclosure extinguished landlord's interest in the property and therefore any entitlement to rental payments under the contracts).[6]

I reject Jet Wine's assertion that on June 15, 1998, when BUSA notified Jet Wine that it was appointing a new broker for the Brands, Jet Wine had an enforceable economic relationship with Schieffelin and Carillon with respect to the Brands.  By that time, the FTC had ordered Diageo to divest itself of the

_____

[6]BUSA argues that Jet Wine cannot establish any of the elements necessary to support either of its claims.  Because I find that the undisputed facts show that BUSA did not intentionally and improperly interfere with the contractual relationships between Jet Wine and its suppliers, and that BUSA is therefore entitled to judgment as a matter of law on both of Jet Wine's tort claims, I decline to address the remaining elements of the plaintiff's claims.

9

Brands and Diageo had entered into agreements for the sale of the Brands to BACO and Lawson. Through no fault of BUSA's, neither Schieffelin nor Carillon was capable of fulfilling its contractual obligations to Jet Wine.

<u>Conclusion</u>

BUSA's motion for summary judgment (document no. 64) is granted with respect to both Jet Wine's claim for intentional interference with contractual relations and Jet Wine's claim for intentional interference with advantageous business relations. The Clerk of Court shall enter judgment in accordance with this Order and close the case.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: September 13, 2001

cc:    Gerald J. Caruso, Esq.
       S. David Siff, Esq.
       J. Mark Dickison, Esq.