Preyer v. Dartmouth College          CV-96-491-JD  06/25/97  P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


LaTanya Preyer

        v.                              Civil No. 96-491-JD

Dartmouth College, et al.


O R D E R


The plaintiff, LaTanya Preyer, brought this action seeking monetary relief under state and federal law as a result of being sexually and racially harassed as a temporary employee of Dartmouth College Dining Services, and not receiving an offer of permanent employment on account of her race. Before the court is the defendants' motion for judgment on the pleadings (document no. 5) pursuant to Fed. R. Civ. P. 12(c).[1]


Background[2]

Dartmouth College Dining Services ("DCDS") provides food services to the Dartmouth College community and employs both

---

[1]The defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on January 21, 1997, for failure to state a claim upon which relief can be granted. However, because the defendants filed an answer to the plaintiff's complaint on December 2, 1996, the pleadings were closed under Fed. R. Civ. P. 7(a). As such, the court will treat the defendant's motion to dismiss as a motion for judgment on the pleadings. See Fed. R. Civ. P. 12(c).

[2]The facts relevant to the instant motion have been alleged by the plaintiff or are not in dispute.

students, some of whom are enrolled in federally funded work-study programs, and non-students. Between September 17, 1993, and June 19, 1994, the plaintiff, who is black, completed three three-month assignments as a temporary employee of DCDS, during which time she was supervised by defendants Beth Jones and John Koiter. She has not alleged that she was a student at Dartmouth while working at DCDS.

During her employment, Koiter asked the plaintiff why black women have large breasts, and told her "once you've had black, you'll never go back." On one occasion during a commencement function, Koiter assigned the plaintiff and two other black women to work at tables that were directly in the sun. When the plaintiff asked Koiter why only blacks received this assignment, Koiter responded, "We all know blacks don't burn." Koiter has acknowledged that he made statements to the plaintiff that could have offensive connotations.

Following the conclusion of the plaintiff's temporary assignments, she received a congratulatory letter and, on or about June 22, 1994, received a verbal thank you from Jones. In the first two weeks of August 1994, the plaintiff applied for permanent positions at DCDS.

Jones and Koiter reviewed the plaintiff's application. In their discussion, Koiter stated that the plaintiff's work did not

satisfy his standards.  On or about August 18, 1994, Jones informed the plaintiff that she would not be offered a position because she had accrued too many absences during her temporary employment with DCDS.  The plaintiff was absent from work on January 12, 13, 14, and 31, 1994; May 22, 1994; and June 14, 1994.  She had a doctor's note for the first three January absences.

After being denied permanent employment, the plaintiff discussed the matter with the Dartmouth Office of Equal Opportunity and Affirmative Action ("EOAA"), whose director described Koiter as "a bigot."  In a meeting to resolve the plaintiff's claim, Jones claimed that the plaintiff's job performance was inadequate.  The plaintiff's personnel file indicates that Jones previously had cited the plaintiff for poor job performance once during the course of her employment.

On November 15, 1994, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New Hampshire Human Rights Commission.  On the charge form, there are several boxes a complainant can check off, including race, sex, religion, and others, in order to denote the basis of discrimination.  Space is also provided for a statement of the claims.  The plaintiff checked off race, but did not mark sex, and specifically did not claim sex discrimination in her

3

statement.  <u>See</u> Defendants' Motion to Dismiss ("Defendants' Motion), Ex. 1; <u>see also</u> <u>id.</u>, Ex. 2 (EEOC notice of charge of discrimination in which box indicating race is only one checked off).[3]

In the charge to the EEOC, the plaintiff's lawyer used three pages to outline the offensive comments described above, as well as the handling of her application for permanent employment and her discussions with the Dartmouth EOAA.  The plaintiff's lawyer concluded the charge by stating:  "These sworn facts support a finding of refusal to hire on the basis of race.  Accordingly, Ms. Preyer demands instatement into one of the positions for which she applied, an injunction against further discriminatory acts against her, and just compensation."  <u>Id.</u>, Ex. 1.  In the charge, there were seven uses of the words "race" or "racially," and no references to the word "sex" or its derivatives.

On September 27, 1996, following her receipt of a right-to-sue letter from the EEOC and the unsuccessful mediation of her claim, the plaintiff filed the complaint in the instant action,

---

[3]Although consideration of documents not attached to or incorporated into the complaint is typically forbidden by Rule 12, the First Circuit has recognized a narrow exception for, <u>inter alia</u>, "documents the authenticity of which are not disputed by the parties," and for official public records.  <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993).  The court considers the plaintiff's charge to the EEOC pursuant to this exception.

alleging that she endured a racially _and_ sexually hostile work environment, _see_ Complaint ¶ 30-31, and that she was not offered permanent employment at DCDS because of her race, _see id._ ¶ 32. She alleges violations of Title VII of the Civil Rights Act of 1964 by Dartmouth College, Jones, and Koiter (Count I); violations of Title IX of the Education Amendments of 1972 by Dartmouth and Koiter (Count II); and violations of 42 U.S.C. § 1981 by Dartmouth and Koiter (Count III). In addition, the plaintiff alleges that Koiter intentionally interfered with her prospective contractual relations (Count IV), and that Dartmouth violated N.H. Rev. Stat. Ann. ("RSA") § 354-A, New Hampshire's Law Against Discrimination (Count V).

## Discussion

The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion. _See_ _Republic Steel Corp. v. Pennsylvania Eng'g Corp._, 785 F.2d 174, 182 (7th Cir. 1986). In both cases, the court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence to support the claims." _Scheuer v. Rhodes_, 416 U.S. 232, 236 (1974) (motion to dismiss under Fed. R. Civ. P. 12(b)(6)). In making its inquiry, the

5

court must accept all of the factual averments contained in the complaint as true, and draw every reasonable inference in favor of the plaintiffs. See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992) (Rule 12(b)(6) motion); Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991) (Rule 12(c) motion). Great specificity is not required to survive a Rule 12 motion. "[I]t is enough for a plaintiff to sketch an actionable claim by means of 'a generalized statement of facts.'" Garita, 958 F.2d at 17 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1990)). In the end, the court may not enter judgment on the pleadings unless it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief.'" Santiago de Castro, 943 F.2d at 130 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988).

I. Title VII

The defendants argue that the plaintiff's Title VII claim should be dismissed to the extent that it alleges sex discrimination because the plaintiff failed to make a specific

allegation of discrimination on the basis of sex to the EEOC.[4]
Specifically, the defendants note that the plaintiff failed to
check off the box for sex discrimination on the EEOC form, and
that the text of the charge, drafted by the plaintiff's attorney,
does not mention sex discrimination specifically.  The plaintiff
contends that her charge to the EEOC gave the defendants
sufficient notice of her sex discrimination claim.

In a Title VII claim, the plaintiff must exhaust all of her
administrative remedies prior to filing a complaint in federal
district court.  See 42 U.S.C.A. § 2000e-5(f)(1) (West 1994);
Lawton v. State Mut. Life Assurance Co., 101 F.3d 218, 221 (1st
Cir. 1996).  In order to satisfy this requirement with respect to
a specific incident of discrimination, the charging party must
give sufficient information to enable the EEOC to determine what
the grievance is about.  The court can consider claims which
reasonably can be expected to grow out of the charge of
discrimination investigated by the EEOC.  See Powers v. Grinnell
Corp., 915 F.2d 34, 38 (1st Cir. 1990); Johnson v. General Elec.,
840 F.2d 132, 139 (1st Cir. 1988).

In the instant case, the plaintiff's charge to the EEOC

---

[4]The defendants have limited their motion to the plaintiff's
sexual harassment claim, and do not assert that the plaintiff
failed to bring a charge of a racially hostile work environment
before the EEOC.

7

includes allegations that she was denied permanent employment by DCDS, and the evidence offered in support thereof is itself evidence of a racially, and potentially sexually, hostile work environment. However, the plaintiff's charge to the EEOC, which was drafted by her attorney, begins: "This office represents La Tanya Preyer in connection with a claim for race discrimination . . . ." Defendant's Motion, Ex. 1, and uses the word "race" or "racially" seven times. The charge concludes by asserting, "These sworn facts support a finding of refusal to hire on the basis of race." Id. Finally, the phrases attributed to Koiter, which form the evidence of the plaintiff's sex discrimination claim, are described only as "racially-based comments." Id. By contrast, the box labelled "sex" is not marked on the EEOC charge, and the three-page description of the plaintiff's claim does not assert that the plaintiff was discriminated against in any way on the basis of her sex.

Where EEOC charges are drafted without the assistance of counsel, courts have demonstrated a particular willingness to overlook discrepancies between the legal theories asserted in the complaint and those asserted in the EEOC charge See, e.g., Jenkins v. Blue Cross Mut. Hosp. Ins., Inc., 538 F.2d 164, 168 (7th Cir. 1976) (permitting sex discrimination claim to proceed even though complainant, in pro se capacity, failed to mark off

8

appropriate box, and endorsing authority recognizing that laymen are likely to be "ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected"); Wetzel v. Liberty Mut. Ins. Co., 511 F.2d 199, 202-03 (3d Cir. 1975), (permitting plaintiff, who was not represented by counsel at time of filing, to proceed with claim based on discriminatory denial of benefits despite not checking appropriate box), vacated on other grounds, 424 U.S. 737 (1976).  However, where the charge is drafted by the complainant's attorney, the rationale underlying such a forgiving standard is not implicated.  See Love v. Pullman Co., 404 U.S. 522, 527 (1972) ("[T]echnicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process."); cf. Haines v. Kerner, 404 U.S. 519, 520 (1972) (pro se complaint should be held to less stringent standards than formal pleadings drafted by lawyers).

In the instant matter, the plaintiff's attorney drafted a charge to the EEOC which claimed only race discrimination.  His failure to provide appropriate notice of a sex discrimination claim, coupled with his failure to amend the charge,[5] indicates

_____

[5]See 29 C.F.R. § 1601.12(b) (1996) ("A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein.") (emphasis added).

an intent not to bring a Title VII claim based on sex discrimination. The plaintiff's attorney now asks the court to resurrect this claim, and the court declines to do so. The court grants the defendants' motion to dismiss the plaintiff's Title VII claim to the extent she alleges discrimination on the basis of sex.

In addition, it is well-settled law in this district that there is no individual liability under Title VII. See, e.g., Attardo v. Sullivan & Gregg, P.A., No. 94-189-JD, slip op. at 2 (D.N.H. January 9, 1996); see also Bergstrom v. University of N.H., 943 F. Supp. 130, 135 (D.N.H. 1996) (collecting cases). Therefore, the defendants' motion to dismiss the plaintiff's Title VII claims is granted as to defendants Jones and Koiter.

## II. Title IX

The defendants argue that the plaintiff's Title IX claim should be dismissed because DCDS is not an education program or activity within the meaning of Title IX. The plaintiff counters that DCDS is part of Dartmouth College, an educational entity, and therefore is covered by Title IX.

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance."  20 U.S.C.A. § 1681(a) (West 1994).  The legal landscape on the issue of coverage of educational programs under the statute has undergone some recent alterations.  In 1984, the Supreme Court held that Title IX was program-specific, i.e., that it only applies to education programs receiving federal funds, and not to universities generally.  See Grove City College v. Bell, 465 U.S. 555, 573-74 (1984).  In 1988, Congress responded to this decision by redefining the phrase "program or activity" to cover all operations of colleges and universities receiving federal funds.  See Education Amendments of 1972, Pub. L. No. 100-259, § 3(a), 102 Stat. 28 (1988) (codified as amended at 20 U.S.C.A. § 1687(2)(A) (West 1994 & Supp. 1997));[6] Cohen v. Brown Univ., 991 F.2d 888, 894 (1st Cir. 1993).

However, while expanding the definition of programs that "receive" federal funds, the congressional amendment did not

_____

[6]Section 1687 provides in pertinent part:  "For the purposes of this chapter, the term[s] 'program or activity' and 'program' mean all of the operations of . . . a college [or] university . . . ."  20 U.S.C.A. § 1687(2)(A).

11

alter the requirement that the program or activity in which the complaining party is involved be educational in nature.  See, e.g., Walters v. President & Fellows of Harvard College, 601 F. Supp. 867, 869 (D. Mass. 1985) (holding that building and grounds department of Harvard University, which provides purely custodial services to university, is not educational program or activity).  Because "all words and clauses in a statute are intended to have meaning and ought to be given effect," United States v. Bongiorno, 106 F.3d 1027, 1035 (1st Cir. 1997) (citing United States Dep't of Treasury v. Fabe, 508 U.S. 491, 504 n.6 (1993)), and in order to give effect to the word "education," the court interprets the prohibition against sexual discrimination in § 1681(a) to apply only to those operations of a college or university that are educational in nature or bear some relation to the educational goal of the institution.

It is apparent that DCDS, which provides food services to the university community, does not have an inherently educational goal.  Cf. Walters, 601 F. Supp. at 869.  In addition, notwithstanding the fact that DCDS employs Dartmouth students, including some who are enrolled in federal work-study programs, the plaintiff has not alleged that she is a Dartmouth student.  Cf. Doe v. Lance, No. 3:95-CV-736-RM, 1996 WL 663159, at *3 (N.D. Ind. Oct. 30, 1996) (non-student may not assert an individual

12

claim under Title IX); <u>Bosley v. Kearney R-1 Sch. Dist.</u>, 904 F. Supp. 1006, 1020 (W.D. Mo. 1995) (Title IX applies only to students and participants in educational programs or activities). Accordingly, the court dismisses the plaintiff's Title IX claim against all defendants.

III. <u>Intentional Interference with Prospective Contractual Relations</u>[7]

Koiter argues that the plaintiff's intentional interference with prospective contractual relations claim should be dismissed because he is an agent of Dartmouth College, and therefore legally incapable of interfering with a contract between the plaintiff and Dartmouth. The plaintiff contends that Koiter was acting with actual malice, in that his actions were motivated by bad faith, personal ill will, spite, hostility, or a deliberate intent to harm the plaintiff, and therefore is capable of such interference.

To establish liability for intentional interference with contractual relations, a plaintiff must prove that: "(1) [she]

---

[7]Although both parties have styled Count IV as "interference with prospective relations," the court understands the complaint to bring an action for "intentional interference with prospective contractual relations." <u>See</u> <u>Heritage Home Health, Inc. v. Capital Region Health Care Corp.</u>, No. 95-558-JD, slip op. at 8-11 (D.N.H. Oct. 1, 1996); <u>Restatement (Second) of Torts</u> § 766B (1979).

had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) [she] was damaged by such interference." Demetracopoulos v. Wilson, 138 N.H. 371, 373-74, 640 A.2d 279, 281 (1994) (emphasis omitted). In the context of an intentional interference with prospective contractual relations claim, the court has limited actionable claims to those situations in which the plaintiff "seeks relief for the defendants' interference with already existing relationships that give rise to a reasonable expectation of economic advantage." Heritage Home Health, Inc. v. Capital Region Health Care Corp., No. 95-558-JD, slip op. at 10-11 (D.N.H. Oct. 1, 1996) (quotation marks omitted).

As a general matter, "a co-employee acting as an agent of [an] employer cannot be a third party for the purposes of interfering with the contract between the plaintiff and [the] employer." Birkmaier v. Rockingham Venture, Inc., No. 94-429-SD, slip op. at 17 (D.N.H. Sept. 7, 1995); see also Alexander v. Fujitsu Bus. Communication Sys., Inc., 818 F. Supp. 462, 470 (D.N.H. 1993). However, an employer's agent may be considered a third party, legally capable of interference, if the agent "[is] motivated by actual malice, where actual malice is defined as bad faith, personal ill will, spite, hostility, or a deliberate

14

intent to harm the plaintiff." <u>Soltani v. Smith</u>, 812 F. Supp. 1280, 1297 (D.N.H. 1993) (emphasis and quotation marks omitted) (quoting <u>Piekarski v. Home Owners Sav. Bank</u>, 956 F.2d 1484, 1495 (8th Cir. 1992)); <u>see also</u> <u>Birkmaier</u>, No. 94-429-SD, slip op. at 17 (employee can be considered third party if he acts outside scope of his employment).

Here, the plaintiff alleges that Koiter made derogatory remarks toward her, and prevented her from securing a permanent position with DCDS because of her race. She is entitled to prove, based on these allegations, that Koiter was acting with actual malice, and therefore was legally capable of interfering with the plaintiff's prospective contractual relations with DCDS. Accordingly, Koiter's motion to dismiss Count IV is denied.

IV. <u>New Hampshire's Law Against Discrimination</u>

The plaintiff's complaint includes an allegation that Dartmouth violated RSA § 354-A, New Hampshire's Law Against Discrimination. However, the plaintiff concedes RSA § 354-A does not create a private right of action in federal court. <u>See, e.g.</u>, <u>Tsetseranos v. Tech Prototype, Inc.</u>, 893 F. Supp. 109, 120 (D.N.H. 1995). Therefore, the defendants' motion to dismiss Count V is granted.

15

<u>Conclusion</u>

The defendants' motion to dismiss (document no. 5) is denied in part and granted in part.

SO ORDERED.

                                          _____
                                          Joseph A. DiClerico, Jr.
                                          Chief Judge

June 25, 1997

cc:  Edward M. Van Dorn Jr., Esquire
      Edward E. Shumaker III, Esquire

16