Schoepfer v. Univ. of NH            CV-97-402-SD    03/04/98

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Joann D. Schoepfer,
f/k/a Shelan

        v.                                  Civil No. 97-402-SD

The University of
New Hampshire, et al.


O R D E R


Introduction

In this civil rights action plaintiff Schoepfer alleges that
her employer, University of New Hampshire ("UNH"), discriminated
against her in the terms and conditions of employment on the
basis of her sex and religion.  Presently before the court is
defendants' motion to dismiss to which plaintiff objects.


Facts

Plaintiff Schoepfer was employed by the University of New
Hampshire as a Public Safety Officer.  Her immediate supervisor
was defendant Beaudoin, chief of the University Police at UNH.
Schoepfer claims that Beaudoin was hostile towards her because of
her gender and religious affiliations.  She further claims that
Beaudoin unlawfully discriminated against her by verbally
harassing her, giving her less desirable job assignments, and
passing her over for promotions.

Discussion

UNH argues it is entitled to judgment on Schoepfer's claim under Title IX which prohibits "discrimination under any education program or activity receiving federal financial assistance."  20 U.S.C.A. § 1681(a) (West 1994).  UNH argues that the University Police is not itself an "education program or activity" and that it is not enough to simply be an arm of UNH, an educational institution.  As support, UNH cites Preyer v. Dartmouth College, 968 F. Supp. 20, 25 (D.N.H. 1997), in which the court adopted such a program-specific approach to whether a program or activity is educational and therefore covered by Title IX.  There, the court held that Title IX does not apply to all of an educational institution's programs or activities but rather only those that are "educational in nature."  Id.  Thus, the court held that Dartmouth College Dining Services, despite being part of Dartmouth College, was not "educational in nature," and thus not covered under Title IX.  Id.

This court respectfully disagrees with the Preyer court's reading of Title IX.  At the outset, it is not entirely clear from the opinion what the Preyer court believed distinguished an educational institution's programs or activities that are "educational in nature" from those that are not.  The court initially indicates that the program or activity must "bear some

2

relation to the educational goals of the institution." Id. However, under this test, the distinction drawn by the court would collapse because all of an educational institution's programs can be said to "bear some relation to the educational goals of the institution." The court later refines the "bear some relation" language by indicating that the program must have an "inherently educational goal." Id. Under this test, the Preyer court's distinction would significantly narrow the scope of Title IX's coverage to only those few limited programs or activities that have an "inherently educational goal."

Congress did not intend Title IX's coverage to be so limited. First, Congress explicitly exempted "social fraternities or sororities" from Title IX's scope. 20 U.S.C.A. § 1681(a)(6). However, this exemption would have been unnecessary if Title IX by its terms only applied to those programs or activities with an "inherently educational goal." Second, there is no reason to believe that Congress was concerned with sex discrimination in the classroom but not with discrimination in housing, athletic programs, or other services provided by an educational institution that are related to education but nonetheless lack an "inherently educational goal." Third, the regulations implementing Title IX prohibit discrimination in programs only remotely related to education such as housing,

3

facilities (such as toilet, locker room and shower), health insurance, and athletics, 34 C.F.R. § 106.31-106.41 (1996); see also Cohen v. Brown University, 101 F.3d 155 (1st Cir. 1996) (holding university's athletic program subject to Title IX's prohibitions).

Additionally, following the limitations imposed on construction of Title IX by Grove City College v. Bell, 465 U.S. 555, 570-574 (1984), Congress amended the statute to make clear its intent that all operations of an educational institution fell within its purview.  As so amended, the statute now provides:

> For the purposes of this chapter, the term "program or activity" and "program" mean all of the operations of . . . (2)(A) a college, university, or other postsecondary institution, or a public system of higher education . . . .

20 U.S.C. § 1687(2)(A).

Next, UNH argues that Title IX does not cover employment discrimination against non-student employees of an educational institution.  As support, UNH cites Walters v. President & Fellows of Harvard College, 601 F. Supp. 867 (D. Mass. 1985) and Preyer, supra, 968 F. Supp. at 25, both of which imply that only students have standing under Title IX.  Preyer, supra, 968 F. Supp. at 25 ("the plaintiff has not alleged that she is a Dartmouth student.").  However, the Supreme Court squarely addressed the issue in North Haven Board of Education v. Bell,

4

456 U.S. 512 (1982), holding that Title IX covers employment discrimination against non-student employees of an educational institution. The contrary holdings of the lower courts in Walters and Preyer must be disregarded. Thus, Schoepfer may proceed with her Title IX claim despite the fact that she is not a student.

Defendant Beaudoin seeks judgment on Schoepfer's Title VII claim, because it is "settled law," according to Beaudoin, that Title VII does not impose individual liability on supervisors, but rather is limited in scope to the employer. While some circuits have so ruled, the First Circuit, characterizing the issue as "complex," Morrison v. Carleton Woolen Mills, Inc., 108 F.3d 429, 444 (1st Cir. 1997), has to date found it unnecessary to do so. Id.; Serapion v. Martinez, 119 F.3d 982, 992 (1st Cir. 1997). Faced with the issue at an earlier date, this judge ruled in favor of individual liability. Lamirande v. Resolution Trust Corporation, 834 F. Supp. 526, 527-529 (D.N.H. 1993). More recently, however, I have been persuaded to the contrary by "the virtual consensus among the circuit courts addressing the issue." Miller v. CBC Companies, Inc., 908 F. Supp. 1054, 1065 (D.N.H. 1995). It follows that the defendant Beaudoin is entitled to the dismissal of the Title VII claim against him.

Next, defendant seeks judgment on Schoepfer's "vicarious

5

liability" claims against UNH on grounds that an employer may never be vicariously liable for the intentionally tortious conduct of an employee because intentional torts are outside the scope of employment. This sweeping generalization flies in the face of clearly established common law principles expressed by the RESTATEMENT (SECOND) OF AGENCY § 231 (1958) which states that: "[a]n act may be within the scope of employment although consciously criminal or tortious." Such common law principles have been relied on in formulating employer liability rules for federal statutes such as Title VII. Meritor Savings Bank v. Vinson, 477 U.S. 57, 70 (1986). Thus, courts have held that employers may be held liable under Title VII on a theory of respondeat superior for the sexual harassment perpetrated by a supervisor, Torres v. Pisano, 116 F.3d 625, 634 (2d Cir. 1997), which clearly undercuts defendants' claim that an employer can never be liable for the intentional torts of an employee. Thus, the court rejects UNH's argument that it cannot be held vicariously liable for the intentional torts of its employees.

<u>Conclusion</u>

For the reasons outlined, the court herewith denies such portions of the motion as seek to dismiss the plaintiff's Title IX claims and her claim grounded on "vicarious liability." The

6

court grants the motion to dismiss as to the individual liability claim against the defendant Beaudoin.

    SO ORDERED.


                                        _____

                                        Shane Devine
                                        Senior Judge

March 4, 1998

cc:   John M. Lewis, Esquire
      Martha V. Gordon, Esquire