Chase v. Genesis Consolidated          CV-99-50-JD    11/09/99

UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Charlene Chase

        v.                              Civil No. 99-50-JD

Genesis Consolidated
Services, Inc. et al.


Penny Elliott

        v.                              Civil No. 99-51-JD

Genesis Consolidated
Services, Inc. et al.


                          O R D E R

        The plaintiffs in the captioned cases both worked for the
same employer and bring the same claims against the same
defendants based on similar allegations of sexual harassment and
assault at work by their supervisor, defendant Andrew Oesch.  The
defendant, Genesis Consolidated Services, moves to dismiss count
four of each complaint, asserting that an employer cannot be
vicariously liable under the Violence Against Women Act ("VAWA"),
42 U.S.C.A. § 13981, for the conduct of an employee.  Because the
defendant's motion and the plaintiff's objection in each case is
substantially the same, the motions are addressed together in a
single order.

## Standard of Review

Since the defendant has filed its answer, the motion is construed as one for judgment on the pleadings. "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When considering a motion for judgment on the pleadings, the "court must accept all of the nonmoving part[ies'] well-pleaded factual averments as true and draw all reasonable inferences in [their] favor." Feliciano v. Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998). Judgment on the pleadings is not appropriate "'unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.'" Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991) (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988)).

## Discussion

In both cases, the plaintiffs worked at a small market called the Campton Cupboard where their supervisor was Andrew Oesch. The defendant Genesis Consolidated Services contracted to perform management and administrative duties for Campton Cupboard during the period in question in the complaints, and as a result, both of the plaintiffs and Oesch were employees of Genesis.

2

Both plaintiffs allege that they were subjected to verbal and physical sexual harassment by Oesch while they worked with him at the Campton Cupboard. Both of the plaintiffs quit their jobs because of sexual harassment.

The plaintiffs both allege claims of discrimination under Title VII, common law assault, intentional infliction of emotional distress, and violation of the VAWA. The VAWA claim is brought against both Genesis and Oesch. With respect to Genesis's liability under the VAWA, the plaintiffs allege, "Genesis is liable for misconduct of Oesch because the conduct was committed by an agent of Genesis, acting within the scope of his employment." Complaints at page 12. Genesis moves to dismiss the VAWA claim against it in each complaint, contending that an employer is not liable under the VAWA based on the doctrine of respondeat superior or vicarious liability.

The VAWA establishes both a "right to be free from crimes of violence motived by gender" and "a Federal civil rights cause of action for victims of crimes of violence motivated by gender." 42 U.S.C.A. § 13981(b) and (a). The VAWA also provides a private cause of action against a "person . . . who commits a crime of violence motivated by gender." § 13981(c). The parties agree, for purposes of the pending motions, that a corporation such as Genesis is a "person" within the meaning of the statute. They

3

disagree as to whether Genesis may be liable under § 13981(c) based on the conduct of its agent, Oesch, acting within the scope of his employment.

Only one court appears to have addressed the question of derivative corporate liability under § 13981. The United States District Court for the District of Oregon, in an unpublished decision, determined that the language of § 13981(c) and its legislative history did not suggest corporate vicarious liability. See Grace v. Thomason Nissan, 1999 U.S. Dist. LEXIS 12711 at *17-18 (D. Or. July 7, 1999). That court held that the "proper standard of corporate liability under § 13981(c) requires a showing that (1) the person who committed the gender-motivated crime of violence has final policymaking authority; (2) a final policymaker 'ratified' a subordinate's unlawful conduct; or (3) a final policymaker acted with deliberate indifference to the subordinate's unlawful conduct." Id.

The corporate defendant in this case, Genesis, urges the court to follow the same reasoning and to dismiss the plaintiffs' VAWA claims against it. The plaintiffs argue that an employer's vicarious liability for its employees' actions under common law and in Title VII actions should also apply in the VAWA context. The plaintiffs also contend that because a corporation may be liable for violation of the VAWA, but can only act through its

4

employees or agents, the civil remedy under the VAWA must be available against corporations through vicarious liability.

In interpreting the meaning of a statute, the court begins with the words of the statute itself, taken in the proper context, and usually does not look beyond the statutory language if the meaning is clear. See Lopez-Soto v. Hawayek, 175 F.3d 170, 172 (1st Cir. 1999); Goncalves v. Reno, 144 F.3d 110, 127 (1st Cir. 1998), cert. denied, 119 S. Ct. 1140 (1999). When the statutory language applicable to the issue in question is ambiguous, being susceptible to more than one reasonable interpretation, the court looks further to understand Congress's intent. See Valerio v. Putnam Assoc., Inc., 173 F.3d 35, 42 (1st Cir. 1999). Because statutory interpretation requires "more than the application of syntactic and semantic rules to isolated sentences[,] [e]ven plain meaning can give way to another interpretation if necessary to effectuate Congressional intent." Cablevision of Boston v. Public Improvement Comm'n, 184 F.3d 88, 101 (1st Cir. 1999). For that reason, the court examines a statute's apparent plain meaning in light of any "undisputed legislative history as a guard against judicial error." Greebel v. FTP Software, Inc., 1999 WL 902898 at *5 (1st Cir. Oct. 8, 1999).

The statutory provision in question provides:

> A person (including a person who acts under color of any statute, ordinance, regulation, custom, or usage of any State) who commits a crime of violence motivated by gender and thus deprives another of the right declared in subsection (b) of this section shall be liable to the party injured, in an action for the recovery of compensatory and punitive damages, injunctive and declaratory relief, and such other relief as a court may deem appropriate.

§ 13981(c). To be liable, the corporation, as the "person" within the meaning of the statute, must have committed a crime motivated by gender.[1] The question presented in this case is whether a corporate employer may be liable under § 13981(c) for gender-motivated crimes committed by its employee.

The statute is silent with respect to vicarious liability. Reference to the statute's legislative history shows that the VAWA civil rights remedy was modeled on 42 U.S.C.A. § 2000e-2 (Title VII) and 42 U.S.C.A. §§ 1981, 1983, and 1985(3). Congress intended § 13981(c) to complement existing civil rights remedies and noted that "current law provides a civil rights remedy for gender crimes committed in the workplace, but not for crimes of violence motivated by gender committed on the street or in the home," H.R. Conf. Rep. No. 103-711, at 385 (1994), reprinted in 1994 U.S.C.C.A.N. 1839, 1853. Section 13981(c) was to apply

---

[1]Since the parties agree for purposes of this motion that a corporation is a "person" within the meaning of the statute, the court does not address that issue.

"primarily against individuals who have committed a crime of violence motivated by gender." S. Rep. No. 103-138 (Sept. 10, 1993), 1993 WL 355617.

Title VII, which provides civil rights remedies against public and private employers, does not provide for claims against individuals. See <u>Preyer v. Dartmouth College</u>, 968 F. Supp. 20, 24 (D.N.H. 1997). Instead, Title VII includes a limited form of derivative liability, based on agency principles, for supervisors' discriminatory conduct. See <u>Burlington Indus. Inc. v. Ellerth</u>, 524 U.S. 742 (1998); <u>Faragher v. Boca Raton</u>, 524 U.S. 775 (1998). Section 1981, which protects against racial discrimination in contracting, and § 1985(3), which provides a remedy against conspiracies to discriminate, have been interpreted to include derivative liability at least as to the actions of private entities. See, e.g., <u>Scott v. Ross</u>, 140 F.3d 1275, 1284 (9th Cir. 1998) (construing § 1985(3)); <u>Fitzgerald v. Mountain States Tel. and Tel. Co.</u>, 68 F.3d 1257, 1262 (10th Cir. 1995) (construing § 1981).

Section 1983 provides a remedy against persons, individuals and entities, who act "under color of state law" to deprive another person of rights protected by the Constitution. <u>Collins v. Harker Heights</u>, 503 U.S. 115, 120 (1992). The language of § 1983 has been interpreted to permit only direct liability claims.

7

See <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658, 691-92 (1978).  In <u>Monell,</u> the Supreme Court noted the original language of § 1983 that provided in pertinent part, "'[A]ny person who . . . shall subject, or cause to be subjected, . . . any person to the deprivation of any rights, privileges or immunities secured by the Constitution of the United States, shall . . . be liable to the party injured . . .'"  <u>Id</u>.  The Supreme Court said, "that language cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor."  <u>Id.</u> at 692.  Instead, the specific provision for liability based on causing a person to "subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent."[2]  <u>Id.</u>

Section 13981(c) imposes liability on "[a] person . . . who <u>commits</u> a crime of violence motivated by gender."  (Emphasis added.)  The language of § 13981(c) is even more direct than the language in § 1983 that the Supreme Court concluded could not be

---

[2]The Supreme Court also considered a proposed amendment to § 1983 that would have made a municipality liable for civil rights violations if the municipality was at fault or knowingly neglected its duty to provide protection.  <u>Monell</u>, 436 U.S. at 692 n.57.  The Court found that because the amendment was interpreted as providing a form of vicarious liability and was defeated, Congress did not intend to impose vicarious liability on municipalities.  <u>Id.</u>

8

easily read to impose vicarious liability based on an employment relationship. Based on the plain language of the statute, which is also informed by the purpose of the statute and its legislative history, a corporation is liable under § 13981(c) when it commits a gender-motivated crime of violence. Liability, therefore, must be determined under the standard applicable to corporate criminal liability.

The scope of corporate criminal liability depends on the statutory definitions in the particular jurisdiction in which the crime is charged. The crime referenced in the statute is not limited to a particular jurisdiction or to a specific criminal offense but instead is broadly defined to mean:

> an act or series of acts that would constitute a felony against the person or that would constitute a felony against property if the conduct presents a serious risk of physical injury to another, and that would come within the meaning of State or Federal offenses described in section 16 of Title 18, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction and whether or not those acts were committed in the special maritime, territorial, or prison jurisdiction of the United States. . . .

42 U.S.C.A. § 13981(d)(2)(A). Therefore, no particular criminal code controls a corporation's criminal liability actionable under § 13981(c).

In the context of corporate criminal liability for conspiracy to defraud the United States under 18 U.S.C.A. § 371,

9

the First Circuit held:

> A corporation may be convicted for the criminal acts of its agents, under a theory of respondeat superior. But criminal liability may be imposed on the corporation only where the agent is acting within the scope of employment. That, in turn, requires that the agent be performing acts of the kind which he is authorized to perform, and those acts must be motivated – at least in part – by an intent to benefit the corporation.

United States v. Cincotta, 689 F.2d 238, 241-42 (1st Cir. 1982). While it is possible for a corporation to be convicted of an offense involving personal violence, some acts, such as rape, are likely to be so far ultra vires that they could not have been performed for the benefit of the corporation. See William M. Fletcher, 10 Cyclopedia of Law of Private Corporations §§ 4954, 4959, (rev. ed. 1993). The court in Grace v. Thomasson Nissan, supra, cited the standard of corporate criminal liability in § 2.07 of the Model Penal Code and reported that at least twenty-one states have adopted a version of the section. See id. at *16-17 & n.10. Section 2.07 provides in pertinent part:

> (1) A corporation may be convicted of the commission of an offense if:
>
> (a) . . . the offense is defined by a statute other than the Code in which a legislative purpose to impose liability on corporations plainly appears and the conduct is performed by an agent of the corporation acting in behalf of the corporation within the scope of his office or employment, except that if the law defining the offense designates the agents for whose conduct the corporation is accountable or the circumstances under which it is accountable, such

10

provisions shall apply; or

(c) the commission of the offense was authorized, requested, commanded, performed or recklessly tolerated by the board of directors or by a high managerial agent acting in behalf of the corporation within the scope of his office or employment.

Based on the provisions of § 2.07, a corporation may be liable in nearly half of the states for the crime of an agent if the criminal statute imposes such liability or if the crime was committed under the authority or reckless tolerance of a corporate board or by a high managerial agent acting within the scope of his employment.

In general, the scope of corporate criminal liability, suggested by § 2.07 of the Model Penal Code and by Cincotta, is similar to the liability of government entities under § 1983 as described by the Supreme Court:

[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Monell, 436 U.S. at 694. In addition, at least as to suits against state actors, the legislative history of § 13981(c) indicates that liability under § 13981(c) was to be no broader than the scope of § 1983. See S. Rep. No. 103-138 (Sept. 10, 1993). The standard used in § 1983 cases to distinguish an

11

entity's own actions, accomplished through its employees or agents, from the individual actions of its agents and employees, provides useful guidance for an analysis of § 13981(c) corporate liability. While some general principles of corporate liability are apparent, the standard will necessarily develop further as it is applied in particular factual circumstances.

A corporation is not liable under § 13981(c) simply because its employee or agent committed a gender-motivated violent crime. See Monell, 436 U.S. at 694. Instead, a plaintiff must show that the corporation itself committed the crime through an agent or employee who was performing authorized acts, within the scope of his employment, and who was motivated at least in part to benefit the corporation. See Cincotta, 689 F.2d at 242; see also Silva v. Worden, 130 F.3d 26, 30-31 (1st Cir. 1997) (defining municipal liability through policy or custom that caused injury in the § 1983 context). Authorization is attributable to the defendant corporation only if the act or course of conduct was approved or the policy, custom, or practice leading to the act was established by corporate "officials whose acts may fairly be said to be those of the [corporation]." Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403-04 (1997). To constitute corporate policy or action, the actor must have "final authority to establish [corporate] policy with respect to the

12

action ordered." <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 481 (1986). If the final corporate authority responsible for corporate policy is informed of circumstances, conduct, or activity by its agents or employees that involve gender-motivated violent crime and remains deliberately or recklessly indifferent to the consequences, failure to act may constitute corporate authorization of subsequent crimes. <u>See, e.g.</u>, <u>Bryan County</u>, 520 U.S. at 415 (discussing municipal liability based on deliberate indifference in hiring); <u>Barreto-Rivera v. Medina-Vargas</u>, 168 F.3d 42, 48 (1st Cir. 1999) (discussing deliberate indifference in § 1983 supervisory liability context).

In this case, the plaintiffs' claims against Genesis are based entirely on allegations of sexual harassment and assault by Andrew Oesch. While the plaintiffs allege that Oesch was Genesis's agent and was acting within the scope of his employment, the complaints include no allegations that Oesch's harassment was done on behalf of Genesis or that Genesis authorized his conduct in any way. The allegations, therefore, are insufficient to state claims of direct corporate liability under § 13981(c). Accordingly, the plaintiffs' claims against Genesis in Count Four of each complaint must be dismissed.

In their objections, the plaintiffs ask to be permitted to amend their complaints to add allegations of direct corporate

13

liability if their claims based on vicarious liability were dismissed. Ordinarily, leave to amend is to be "freely given when justice so requires." Fed. R. Civ. P. 15(a). However, the plaintiffs' requests to amend, included within their objections, are not properly presented for consideration. Under our local rules, "[m]otions, other than those submitted during trial, shall be considered only if submitted separately from other filings and only if the word 'motion' appears in the title." LR 7.1(a)(2). Therefore, the plaintiffs' requests to amend are denied without prejudice to file, if appropriate, motions to amend their complaints.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motions to dismiss the VAWA claims against Genesis, Count Four, in each complaint (document no. 11 in 99-51-JD and document no. 13 in 99-50-JD)) are granted.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

November 9, 1999
cc:  Edward M. Van Dorn Jr., Esquire
     David A. Garfunkel, Esquire
     Gerard J. Boyle, Esquire