**GMAC COMMERCIAL MORTGAGE CORPORATION, Plaintiff,**

v.

**Pamela W. GLEICHMAN, et. al., Defendants.**

**No. Civ. 99–178–P–C.**

United States District Court, D. Maine.

Dec. 31, 1999.

Michael A. Nelson, Brendan P. Reilly, Jensen, Baird, Gardner & Henry, Portland, Maine, Warren Anthony Fitch, Swidler Berlin Shereff Friedman, Washington, DC, for plaintiff.

Seth W. Brewster, Verrill & Dana, Portland, ME, for defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

On June 1, 1999, Plaintiff GMAC Commercial Mortgage Corporation ("GMAC") filed a three-count Complaint and Demand for Jury Trial ("Complaint") (Docket No. 1) against Defendants Pamela W. Gleichman, Greyrock Tower, LLC ("Greyrock"), and Landmark America, LLC ("Land-

mark"). Counts I and II of the Complaint seek damages from Greyrock and Gleichman, respectively, for breach of contract. *See* Complaint. Count III of the Complaint seeks restitution from Greyrock, Gleichman, and Landmark based upon a theory of *quantum meruit. Id.* On June 24, 1999, Gleichman, Greyrock, and Landmark filed an Answer, Counterclaim and Demand for Jury Trial ("Counterclaim") (Docket No. 4); also named as Counterclaim Plaintiffs in the Counterclaim were Terrace Springs, LLC ("Terrace Springs") and Armstrong Square, LLC ("Armstrong Square"), two partnerships directed by Gleichman.

On July 30, 1999, Gleichman filed a Motion for Judgment on the Pleadings as to Count II of GMAC's Complaint ("Motion for Judgment") (Docket No. 15). On August 25, 1999, Defendants/Counterclaim Plaintiffs filed a First Amended Answer, Counterclaim and Demand for Jury Trial ("Amended Counterclaim") (Docket No. 22). Specifically, in Count I of the Amended Counterclaim, Greyrock alleges a claim for breach of contract against GMAC, and in Count II, Greyrock seeks restitution from GMAC under a theory of unjust enrichment. *See* Amended Counterclaim. In Count III, Terrace Springs and Armstrong Square allege claims against GMAC for breach of contract, and in Count IV, Terrace Springs and Armstrong Square allege claims against GMAC under a theory of promissory estoppel. *Id.* On September 27, 1999, GMAC filed a Motion to Dismiss and Incorporated Memorandum of Law as to the Amended Counterclaim ("Motion to Dismiss") (Docket No. 24).

On November 5, 1999, GMAC filed a Motion for Summary Judgment and Incorporated Memorandum of Law against Greyrock as to Count I of the Complaint ("Complaint Summary Judgment") (Docket No. 30); GMAC also filed a Motion for Summary Judgment and Incorporated Memorandum of Law as to Counts I through IV of Defendants/Counterclaim Plaintiffs' Amended Counterclaim ("Coun-

terclaim Summary Judgment") (Docket No. 32). A week later, on November 12, 1999, Gleichman, Greyrock, Armstrong Square, and Terrace Springs filed Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment as to the Complaint and Count I of the Amended Counterclaim. ("Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment") (Docket No. 36).

Presently before the Court, therefore, are three motions on behalf of GMAC: the Motion to Dismiss the Complaint, the Motion for Summary Judgment with respect to the Complaint, and the Motion for Summary Judgment as to the Counterclaim. Also before the Court are Gleichman's Motion for Judgment, as well as Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment. For the following reasons, the Court will deny GMAC's Motion to Dismiss the Complaint, the Motion for Summary Judgment with respect to the Complaint, and the Motion for Summary Judgment as to the Counterclaim. The Court will also deny Gleichman's Motion for Judgment and Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment.

## BACKGROUND

Plaintiff GMAC's Complaint alleges the following facts. Defendant Pamela Gleichman is a resident of Maine and the sole owner of Defendant Greyrock. *Id.* at 2 ¶ 2. Greyrock is a limited liability corporation organized and existing under the laws of Maine with a principal place of business in Portland. *Id.* Gleichman is also the owner and chief executive officer of Defendant Landmark, a limited liability corporation incorporated in Maine with a principal place of business in Maine. *Id.* at 2 ¶ 4.

In its Complaint, GMAC alleges that Gleichman created Greyrock for the purpose of developing, owning, and selling a luxury apartment complex in Stamford, Connecticut to be called the "Greyrock Tower." *Id.* The Greyrock Tower is only one part of a larger luxury apartment com-

plex called the "Greyrock Tower Development" ("Greyrock Development"). Complaint at 2 ¶ 7. The Greyrock Development was to consist of the real property located in Connecticut upon which the Greyrock Tower was to be built, the apartment complex itself, as well as other facilities and infrastructure related to the project. *Id.* at 3–4 ¶ 7.

On October 9, 1997, Landmark entered into a contract (the "property contract") with the city of Stamford for the purchase of the real property needed for the Greyrock Development. Complaint at 3 ¶ 8. Then, on October 31, 1997, Landmark entered into an agreement with Avalon Properties, Inc. ("Avalon"), a Maryland corporation, for the sale of the Greyrock Development after its construction was complete. *Id.* at 3 ¶ 9. Avalon subsequently merged with Avalon Bay Communities, Inc. ("Avalon Bay") and, as a result, Landmark assigned its contract with Avalon to Avalon Bay on November 20, 1997. *Id.* Furthermore, Landmark assigned its rights in the property contract with Stamford to Greyrock. *Id.* Thereafter, on December 3, 1997, Greyrock (as owner of the Greyrock Development project), E & F/Walsh Building Company, LLC (as contractor), and Perkins Eastman Architects PC (as architects) entered into an agreement for the construction of the Greyrock Development. *Id.* at 3 ¶ 10.

A few months later, in April or May of 1998, Gleichman, in her capacity as the chief executive officer of Landmark, asked Steven Bechen, a vice-president of GMAC, to obtain financing for the Greyrock Development. Complaint at 4 ¶ 11. GMAC is a commercial mortgage banking company incorporated in California with a principal place of business in Pennsylvania. Complaint at 2 ¶ 1. In response to her request, Bechen and GMAC, between April 1998 and December 1998 made extensive efforts to place a construction loan for the Greyrock Development. *Id.* at 4 ¶ 12. On October 15, 1998, Bechen developed a plan to finance the Greyrock Development. *Id.*

Specifically, rather than financing the Greyrock Development with a conventional construction loan, Bechen proposed that "the construction loan for the project would be used to back an issue of taxable bonds [ (the "Bonds") ] which would be sold in a private placement, and the proceeds of the Bonds would be used to make the construction loan." *Id.* To this end, Bechen in December of 1998, began work with B.C. Ziegler Company ("Zeigler") which specializes in the underwriting and placement of privately issued taxable bonds. *Id.* at 4 ¶ 13. Also at that time, Bechen began to work with the AIG Company ("AIG") in an effort to obtain AIG's agreement to issue a "financial guaranty insurance policy" ("the guaranty insurance") for the Bonds. *Id.* at 5 ¶ 13.

On January 25, 1999, GMAC issued a preliminary letter of intent (the "Greyrock Term Sheet") to Gleichman, at Landmark, with respect to the proposed financing for the Greyrock Development. Complaint at 5 ¶ 14. On March 3, 1999, GMAC alleges that Gleichman, acting in her personal capacity and as chief executive officer of Landmark, signed and returned the executed Greyrock Term Sheet to GMAC. *Id.* The Greyrock Term Sheet required, *inter alia,* payment to GMAC of a deposit (the "Good Faith Deposit") of $125,000. *Id.* at 5 ¶ 15. Therefore, on the same day that Gleichman executed the Greyrock Term Sheet, Gleichman forwarded to GMAC a check drawn on a Landmark account in the amount of $125,000. *Id.*

On March 12, 1999, Bechen sent a final underwriting package for the Greyrock Development to Ziegler for its review. Complaint at 6 ¶ 16. Eleven days later, Bechen sent a final underwriting package to AIG for the same purpose. *Id.* Thereafter, on March 31, 1999, as a result of the continuing work of Bechen and others, GMAC's loan approval committee, based upon the Bond financing project, approved a construction loan for the Greyrock Development. *Id.* at 6 ¶ 17. Specifically, GMAC offered to provide a construction

loan to Greyrock on the terms set forth in a "Construction Loan Commitment Contract" (the "Loan Contract"). *Id.* On April 16, 1999, GMAC signed the Loan Contract and mailed it to Gleichman for her signature. *Id.*

GMAC alleges that on April 20, 1999, Gleichman, on behalf of Greyrock, executed the Loan Contract and returned it to GMAC. Complaint at 6 ¶ 18. Under the terms of the Loan Contract, GMAC agreed, *inter alia,* to extend up to $49,-200,000 to Greyrock, in principal, for the construction of the Greyrock Development. *Id.* at 6 ¶ 19. Furthermore, closing on the Loan Contract was required on or before June 15, 1999. *Id.* at 7 ¶ 19.

Following receipt of the Loan Contract from Gleichman, GMAC directed its counsel to prepare the documents necessary for closing. *Id.* at 7 ¶ 20. In addition, GMAC circulated drafts of these documents to Gleichman and her counsel, Zeigler and its counsel, AIG, Avalon Bay, and Richard Nelson (the project manager for Landmark). *Id.*

On April 19, 1999, Bechen received a sample financial guaranty insurance policy from AIG that was to serve as the model for the guaranty insurance for the Bonds. Complaint at 7 ¶ 21. Then on April 28, 1999, Bechen circulated to Nelson a preliminary checklist for the closing. *Id.* at 7–8 ¶ 23. The next day Bechen requested that Nelson provide due diligence and closing documentation. *Id.* at 8 ¶ 23. On April 30, 1999, AIG advised Bechen that it had finished its underwriting of the Greyrock Development and that it was in the process of locating reinsurers. *Id.* 8 ¶ 24. About five days later, GMAC's counsel requested closing documentation from Christopher Coggeshall, Gleichman's corporate counsel. *Id.* In particular, on May 5, 1999, GMAC telephoned Coggeshall to schedule a conference to negotiate the terms of a "Tri-Party Agreement" as required by the Loan Contract. *Id.* at 8–9 ¶ 25.

Two days later, however, Coggeshall telephoned GMAC to advise it that Gleich-

man had instructed him to stop working on the Greyrock Development and that the "deal was on hold." *Id.* at 9 ¶ 27. Thereafter, on May 10, 1999, Gleichman informed Bechen that Greyrock "would not perform its contractual obligations" under the Loan Contract, and that Greyrock "would not proceed to [c]losing on the Loan." *Id.* at 10 ¶ 33. In a letter dated May 12, 1999, Bechen urged Gleichman to perform her obligations under the Loan Contract. *Id.* at 10 ¶ 34. Gleichman, however, on May 18, 1999, informed Bechen that Greyrock would not perform under the Loan Contract. *Id.* at 11 ¶ 35. Gleichman also informed Bechen that she had sold Greyrock's assets and that she was going to dissolve Greyrock altogether. *Id.* Based upon the foregoing, GMAC brought this action.

At this point in the Court's recitation of the facts, the Court will set forth the factual allegations of the Amended Counterclaim. At about the same time that Gleichman was seeking financing from GMAC for the Greyrock Development, she was also in pursuit of financing for two other development projects on behalf of Terrace Springs and Armstrong Square. Counterclaim at 12 ¶ 16. Terrace Springs is a limited partnership organized under the laws of Illinois, and Armstrong Square is a limited partnership organized under the laws of Maine; both of these partnerships were formed to develop apartment complexes in Illinois and Pennsylvania, respectively. *Id.* at 10, 12 ¶¶ 5, 6. Gleichman is a member of both partnerships. *Id.* at 12 ¶ 16.

On March 24, 1999, GMAC issued Gleichman two letters of intent regarding the two foregoing development projects. Amended Counterclaim at 12 ¶¶ 18, 19. The first letter of intent (the "Terrace Springs Term Sheet") concerned proposed financing for a development in Illinois called the "Terrace Springs Development." *Id.* at 12 ¶ 18. The second letter of intent (the "Armstrong Square Term Sheet")

concerned proposed financing for a development in Pennsylvania called the "Armstrong Square Development." *Id.* at 12 ¶ 19. On March 24, 1999, Gleichman, acting in her capacity as partner of both Terrace Springs and Armstrong Square, signed and returned the executed Terrace Springs and Armstrong Square Term Sheets to GMAC. *Id.* at 12 ¶¶ 18, 19.[1]

On May 12, 1999, Gleichman, on behalf of both Armstrong Square and Terrace Springs, spoke with Bechen at GMAC and requested that GMAC "pursue the financing of both the Terrace Springs Development and the Armstrong Square Development." *Id.* at 13 ¶ 21. In response, however, Bechen, on behalf of GMAC, told Gleichman that GMAC would not perform its obligations under either the Terrace Springs or the Armstrong Square Term Sheets. *Id.* at 13 ¶ 23. As a result, Gleichman, Terrace Springs, and Armstrong square filed the Amended Counterclaim.

## DISCUSSION

■ As indicated above, the parties have filed numerous motions in this action. However, before the Court can address the substantive issues raised by the parties' motions, the threshold matter of which substantive law applies to the claims alleged in the Amended Counterclaim must be resolved. Unlike the Loan Contract at issue in GMAC's Complaint, none of the Term Sheets[2] at issue in Defendants/Counterclaim Plaintiffs' Amended Counterclaim contain any choice-of-law provision. Therefore, because this is a diversity action, and since the Term Sheets lack any internal law designation, the

Court must conduct an appropriate conflict-of-laws analysis.

### I. *Conflict of Laws*

For the sake of brevity, the Court will simply state that Defendants/Counterclaim Plaintiffs' argue that Nebraska substantive law applies to the Term Sheets at issue in the Amended Counterclaim. Objection of Counterclaim Plaintiffs to Counterclaim Defendants' Motion to Dismiss Counterclaims at 6 ("Objection to Motion to Dismiss") (Docket No. 12). Conversely, GMAC argues that Maine is the state with the "most significant relationship" to the Term Sheets. Reply to Objection of Counterclaim Plaintiffs to Counterclaim Defendants' Motion to Dismiss Counterclaim at 1–2 ("Reply to Objection") (Docket No. 19). For the following reasons, the Court agrees with GMAC.

"[A] federal court which exercises diversity jurisdiction over state-law claims must apply the choice-of-law rules of the state in which it sits." *Burr v. Melville Corp.,* 868 F.Supp. 359, 363 (D.Me.1994). "The state of Maine generally follows the Restatement (Second) of Conflicts in determining choice-of-law issues." *Ashmore v. Northeast Petroleum Div.,* 843 F.Supp. 759, 772 (D.Me.1994). In this case, the claims of the Amended Counterclaim sound in contract and, as stated earlier, none of the Term Sheets at issue in the Amended Counterclaim contain any choice-of-law provision. Under the Restatement (Second) of Conflicts, therefore, the Court must determine "what state has the 'most significant relationship' to the transaction and parties." *Burr,* 868 F.Supp. at 363; Restatement (Second) of Conflicts § 188(1) (1971). Under this analysis, the Court will

---

1. A copy of the Terrace Springs and Armstrong Square term sheets are attached as exhibits to the Amended Counterclaim. *See* Amended Counterclaim, Exhibits 1 & 2. Therefore, the Court will consider the contents of the exhibits as part of the pleading. *See* Fed.R.Civ.P. 10(c) ("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes").

2. For the purposes of the Court's conflict-of-laws analysis, the Court will refer to the Greyrock, Terrace Springs, and Armstrong Square Term Sheets, collectively, as the "Term Sheets."

consider the following "contacts" to the extent that they are relevant to the issues at hand: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the contract's place of performance; (4) where the subject matter of the contract is located; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *See Burr,* 868 F.Supp. at 363; *Ashmore,* 843 F.Supp. at 772; Restatement § 188(2).

■ Under the first factor of the Restatement test, the place of contracting, the parties agree that Greyrock, Terrace Springs, and Armstrong Square signed the Term Sheets in Maine and returned them to GMAC. *See* Objection to Motion to Dismiss at 5; Reply to Objection at 2. Thus, the Term Sheets were executed in Maine. *See Dole Co. v. Aetna Cas. & Sur. Co.,* 269 F.Supp. 72, 76 n. 9 (D.Me.1967). Consequently, the first factor of the test weighs in favor of Maine.

The second factor of the test, the place of negotiation, weighs in favor of no state. Defendants/Counterclaim Plaintiffs argue that the Term Sheets were negotiated in Nebraska because Bechen, GMAC's representative, drafted the Term Sheets there and presented them to Defendants/Counterclaim Plaintiffs with no opportunity to negotiate or amend particular terms. *See* Objection to Motion to Dismiss at 5–6. Under the Restatement, however, the contact of negotiation "is of less importance when there is no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone." Restatement § 188(2) cmt. e. The factual allegations of the Amended Counterclaim indicate that the majority of the correspondence between the parties took place by mail and telephone. *See* Amended Counterclaim at 10–13 ¶¶ 9–22. Therefore, under these facts, this factor militates in favor of neither Maine nor Nebraska.

The third factor, the place of performance, weighs in favor of Nebraska.

Bechen and GMAC were to provide underwriting and other services to Defendants/Counterclaim Plaintiffs with regard to the construction financing for the three separate real estate developments. *See* Restatement § 188(2) cmt. c ("state where performance is to occur under a contract has an obvious interest in the nature of the performance and in the party who is to perform"). There is no question that GMAC was to perform the foregoing services at its offices in Nebraska. Consequently, the third factor favors Nebraska.

With respect to the fourth factor, the location of the subject matter of the contract, GMAC argues that the loans themselves are the subject matter of the Term Sheets; therefore, because Defendants/Counterclaim Plaintiffs are located in Maine, Maine is the location of the subject matter of the contracts. Conversely, Defendants/Counterclaim Plaintiffs argue that the subject matter of the Term Sheets is the particular location of the property for which the financing was sought; namely, Illinois, Pennsylvania, and Connecticut. The Court, however, finds that since both arguments are equally viable, and because it is unclear under the facts which interpretation of the Term Sheets is correct, this factor can favor no specific state over another. *See Lincoln Nat. Life Ins. Co. v. NCR Corp.,* 603 F.Supp. 1393, 1399 (N.D.Ind.1984) (where circumstances do not permit any real conclusion as to subject matter of contract, nothing can be derived from the factor), *aff'd,* 772 F.2d 315 (7th Cir.1985).

Finally, the fifth factor, the residence, place of incorporation, and principal-place-of-business aspect of the five-part test generally favors Maine. Specifically, Gleichman is a resident of Maine, and she is the owner of Greyrock, a Maine corporation with its principal place of business in Portland, Maine. Amended Counterclaim at 10 ¶ 4. Moreover, Armstrong Square is a limited partnership organized under the laws of Maine, with its principal place of busi-

ness in Portland, Maine. *Id.* at 10 ¶ 6. By contrast, Terrace Springs is an Illinois partnership with its principal place of business in Illinois; nonetheless, there is no question that Gleichman is a partner of both Armstrong Square and Terrace Springs and, as stated previously, she is a Maine resident. *Id.* at 10, 12 ¶¶ 5, 18, 19. Finally, GMAC is a California corporation with its principal place of business in Pennsylvania. *Id.* at 10 ¶ 5; Complaint at 2 ¶ 1.

Although the residency factor, when standing alone, is not a dispositive indicator under any conflict-of-laws analysis, in this case, it does tip the balance in favor of Maine as the state with the most significant relationship to the Term Sheets. Two of the legal entities (Greyrock and Armstrong Square) are from Maine, and both partnerships are directed by a Maine resident (Gleichman). Most important, however, none of the parties are from Nebraska. Therefore, because Maine and Nebraska are arguably the only two states with any real interest in the Term Sheets, the fact that the majority of the parties are from Maine and none of them are from Nebraska, when viewed in conjunction with the remaining factors, is decisive of this conflicts issue.

Consequently, although Nebraska in this case may have some interest in the Term Sheets, in light of the totality of the factors discussed above, any interest that Nebraska may have in this case is subordinate to that of Maine. Accordingly, the Court concludes that Maine is the state with the most significant relationship to the Term Sheets and, therefore, Maine substantive law applies to the Term Sheets.

**3.** Even though the Greyrock Term Sheet executed on March 3, 1999 was not attached to the Amended Counterclaim, and notwithstanding the general rule that a court may consider only the allegations of the operative complaint in ruling on a 12(b)(6) motion, this Court may review the Greyrock Term Sheet's provisions in determining whether Count I of the Amended Counterclaim states a viable claim for relief. *See Beddall v. State Street*

## II. GMAC's Motion to Dismiss Amended Counterclaim

With the conflict-of-laws issue settled, the Court turns its attention to GMAC's Motion to Dismiss all four counts of the Amended Counterclaim. Pursuant to Fed. R.Civ.P. 12(b)(6), any party against whom a claim for relief has been asserted is entitled to defend against such a claim, by way of a motion to dismiss, on the ground that the allegations of the claim fail to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court "must take the allegations of the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Swartz v. Schering–Plough Corp.*, 53 F.Supp.2d 95, 98 (D.Ma.1999) (citations omitted). Indeed, a court may grant dismissal of a claim only if it appears beyond doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Roeder v. Alpha Indus. Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quotations omitted).

### A. Count I: Greyrock's Breach of Contract Claim

GMAC argues that Greyrock's breach of contract claim alleged in Count I of the Amended Counterclaim must be dismissed because, contrary to Greyrock's allegations, the Greyrock Term Sheet does not provide that the $125,000 Good Faith Deposit must be returned to Greyrock in the event that GMAC failed to proceed to closing. *See* Motion to Dismiss at 4. As such, GMAC argues, Greyrock's breach of contract claim fails to state a claim upon which relief may be granted. *Id.* at 5.[3]

*Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (where authenticity of agreement not in question, court, for purposes of ruling on motion to dismiss may review contents of agreement though not part of complaint). Presently, Greyrock has not disputed the authenticity of the Greyrock Term Sheet attached to GMAC's Motion to Dismiss. *See* Motion to Dismiss, Exhibit A; Objection of Counterclaim Plaintiffs ... Counterclaim Defendant's

In its Amended Counterclaim, Greyrock alleges that "GMAC and Greyrock entered into a valid and binding agreement, the [Greyrock] Term Sheet, which provided that *if the loan did not proceed to Closing,* Greyrock would be entitled to a refund of its Good Faith Deposit." Amended Counterclaim at 13 ¶ 27 (emphasis added). Therefore, Greyrock alleges, because the construction loan never proceeded to closing, it is entitled to a refund of its Good Faith Deposit.

The actual language of the Greyrock Term Sheet provides as follows:

> Upon acceptance of this Term Sheet, [Greyrock] shall pay to [GMAC] a Good Faith Deposit in the amount of $125,000. *If the Construction Loan is not approved in a form substantially similar to this preliminary letter of intent,* the Good Faith Deposit will be returned to [Greyrock]. . . .

Motion to Dismiss, Exhibit A (emphasis added).

When the wording of the Amended Counterclaim is compared with the wording of the Greyrock Term Sheet, it is apparent that the Amended Counterclaim's allegation that Greyrock was entitled to a refund of the Good Faith Deposit if the "loan did not proceed to Closing" is inaccurate. In light of the foregoing, therefore, it would appear that GMAC's Motion to Dismiss should be granted. For the following reasons, however, the granting of the motion is unwarranted.

Paragraph 26 of the Amended Counterclaim incorporates by reference the preceding twenty-five paragraphs of the pleading. Amended Counterclaim at 13 ¶ 26. In Paragraph thirteen of the

Amended Counterclaim, Greyrock alleges the following: "For various reasons, including GMAC's failure to perform its obligations under the [Greyrock Term Sheet], *GMAC's failure to provide the financing* as set forth in the [Greyrock Term Sheet], the loan never proceeded to Closing." *Id.* at 11 ¶ 13 (emphasis added). This allegation, when viewed in a light most favorable to Greyrock, sufficiently sets forth a factual basis that, if true, would support Greyrock's claim for relief under the provisions of the Greyrock Term Sheet. *See Roeder,* 814 F.2d at 25 (court may dismiss claim only if plaintiff can prove no set of facts that would entitle it to relief). Consequently, GMAC's Motion to Dismiss Count I of the Amended Counterclaim must be denied.[4]

### B. *Count II: Greyrock's Unjust Enrichment Claim*

■ With regard to Greyrock's claim for unjust enrichment in Count II of the Amended Counterclaim, GMAC argues that the claim must be dismissed because it is "expressly predicated upon the existence of a contract," and since the existence of a contract precludes recovery under a theory of unjust enrichment, Greyrock's claim is not legally viable. Motion to Dismiss at 5–7. The Court is unpersuaded.

While the Maine Law Court has recognized "that the existence of a contract precludes recovery on a theory of unjust enrichment because unjust enrichment describes recovery . . . when there is no contractual relationship," *June Roberts Agency, Inc. v. Venture Properties, Inc.,* 676 A.2d 46, 49 n. 1 (Me.1996), a party, none-

Motion to Dismiss Amended Counterclaim. Therefore, the Court will examine the Greyrock Term Sheet, as well as the allegations of the Amended Counterclaim, in determining whether Count I of the Amended Counterclaim states a viable claim for relief.

**4.** The Court also notes that, contrary to GMAC's assertion, Geyrock has not admitted in its Amended Answer that GMAC approved a construction loan in a form substantially

similar to the terms of the Term Sheet. *See* Amended Answer at 4 ¶ 17. Rather, Greyrock admits only that on April 16, 1999, GMAC offered to provide Greyrock a construction loan according to the terms set forth in a thirteen-page Loan Contract, and that the terms set forth in that document, were the terms on which GMAC offered to approve the loan. *Id.*

theless, "is not precluded from pleading both theories because a factfinder may find that no contract exists and may still award damages on a theory of unjust enrichment." *Id.; see also Bates v. Anderson,* 614 A.2d 551, 552 (Me.1992). Moreover, under the Federal Rules of Civil Procedure, a party is specifically permitted to plead in the alternative.

> A pleading which sets forth a claim for relief ... shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. *Relief in the alternative or of several different types may be demanded.*

Fed.R.Civ.P. 8(a) (emphasis added).

Here, Greyrock, albeit somewhat inartfully, has pled alternative forms of relief in its Amended Counterclaim. But, as discussed above, this course of action is perfectly appropriate under both Maine law and the Federal Rules of Civil Procedure.[5] For the foregoing reasons, the motion to dismiss Count II of the Amended Counterclaim will be denied.

### C. Count III: Defendants/Counterclaim Plaintiffs' Claims for Breach of Contract

■ GMAC has moved to dismiss Terrace Springs' and Armstrong Square's breach of contract claims in Count III of the Amended Counterclaim on the ground that the legal theories which underlie those claims lack merit. Motion to Dismiss at 7. Specifically, GMAC argues that pursuant to the plain terms of the Terrace Springs and Armstrong Square Term Sheets, it had no "obligation" to Defendants/Counterclaim Plaintiffs that it could have breached. *Id.* at 7–8. Therefore, GMAC maintains, the Motion to Dismiss must be granted.[6]

In Count III of the Amended Counterclaim, Counterclaim Plaintiffs allege that they entered into valid and binding agreements with GMAC in order to secure financing for the Terrace Springs and Armstrong Square developments. Amended Counterclaim at 12 ¶ 17. These "valid and binding agreements" were evidenced by the Terrace Springs and Armstrong Square Term Sheets. *Id.* at 14 ¶ 33. Counterclaim Plaintiffs also allege that GMAC, via the Terrace Springs and Arm-

5. GMAC's reliance on *Lynch v. Ouellette,* 670 A.2d 948 (Me.1996) as support for its argument that the existence of a contract precludes quasi-contractual relief is misplaced. In *Lynch,* the trial court granted summary judgment in favor of the defendants on the plaintiff's breach of contract claim, and the plaintiff appealed the trial court's ruling. *Id.* The Maine Law Court upheld the trial court's finding that there was no genuine issue of material fact that the parties had a contractual relationship and that the plaintiff had breached the contract. *Id.* at 949–50. The Law Court also found, however, that because the trial court had determined that a contractual relationship existed between the parties *as a matter of law,* the plaintiff was precluded from any recovery under a theory of unjust enrichment. *Id.* at 950.

The distinguishing aspect of this case from the decision in *Lynch* should be plain. Here, Greyrock has merely alleged alternate theories of relief and, at this stage of the litigation, there has been no determination whatsoever whether any contractual relationship actually existed between the parties. In *Lynch,* the trial court expressly found, after ruling on a motion for summary judgment, that the parties had a contract and that the plaintiff was in breach of that contract; thus, no recovery under a theory of unjust enrichment was possible. *Lynch,* 670 A.2d at 950.

6. GMAC also argues that under Maine law, there is no implied contractual duty to act in good faith and, therefore, it had no good-faith obligation to Counterclaim Plaintiffs to secure financing for the Terrace Springs and Armstrong Square development projects. *Id.* at 8–9. The Court recognizes that, except for contracts governed by Maine's Uniform Commercial Code, Maine does not recognize the implied covenant of objective good faith in contracts. *See Niedojadlo v. Central Maine Moving & Storage Co.,* 715 A.2d 934, 937 (Me.1998); *Tobin v. University of Maine System,* 59 F.Supp.2d 87, 95 n. 12 (D.Me.1999). Nonetheless, it is unneccessary for the Court to address GMAC's argument because Count III of the Amended Counterclaim states a viable claim for relief.

strong Square Term Sheets, represented to them that it would "work diligently" on the Terrace Springs and Armstrong Square Term Sheet "loan proposals" once the Term Sheets were executed. *Id.* at 13 ¶ 20, Exhibits 1, 2.

Based upon the foregoing allegations,, the Court finds that Count III of the Amended Counterclaim sufficiently sets forth a claim for breach of contract based upon the Terrace Springs and the Armstrong Square Term Sheets. Count III alleges that GMAC was obligated to consider Defendants/Counterclaim Plaintiffs' loan applications. Count III further alleges that GMAC refused to perform that obligation, thereby breaching its obligation to consider the loan proposals. *Id.* at 13–14 ¶¶ 21–22, 33.

Consequently, even though the Terrace Springs and Armstrong Square Term Sheets provide that GMAC would "be willing to consider placing" a construction loan, and that any decision to place such a loan remained entirely in GMAC's discretion, Count III alleges that GMAC promised to process Defendants/Counterclaim Plaintiffs' loan applications, yet, GMAC failed to do so. Therefore, Count III of the Amended Complaint states a viable claim for relief and GMAC's Motion to Dismiss this count must be denied.

D. *Count IV: Defendants/Counterclaim Plaintiffs' Claims of Promissory Estoppel*

GMAC has moved to dismiss Terrace Springs' and Armstrong Square's promissory estoppel claims in Count IV of the Amended Complaint on the ground that the Terrace Springs and Armstrong Square Term Sheets do not make any promises that Defendants/Counterclaim Plaintiffs could have reasonably relied upon. Motion to Dismiss at 9–10.

■ "Promissory estoppel is a contract doctrine invoked to enforce promises which are otherwise unenforceable so as to avoid injustice." *Cottle Enterprises, Inc. v. Town of Farmington,* 693 A.2d 330, 336 (Me.1997) (citation omitted). The Maine Law Court in *Daigle Commercial Group, Inc. v. St. Laurent,* 734 A.2d 667, 672 (Me.1999) adopted the Restatement formulation of the promissory estoppel doctrine. Under that doctrine

[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Restatement (Second) Of Contracts § 90(1) (1980).

■ Count IV of the Amended Counterclaim alleges that GMAC represented to Defendants/Counterclaim Plaintiffs, through the Terrace Springs and Armstrong Square Term Sheets, that it would "work diligently" on the term sheet loan proposals in order to secure financing for the Terrace Springs and Armstrong Square development projects. Amended Counterclaim at 13 ¶ 20. The Terrace Springs and Armstrong Square Term Sheets also provide that they are "an indication of the terms and conditions under which [GMAC] *would proceed to administer* the combination construction [loans]" once the Term Sheets were acknowledged by Defendants/Counterclaim Plaintiffs. *Id.,* Exhibits 1, 2 (emphasis added). Furthermore, the Terrace Springs and Armstrong Square Term Sheets state that upon their execution, Defendants/Counterclaim Plaintiffs "[acknowledge] that [they] are working solely with [GMAC]" to procure financing on their projects. *Id.*

Defendants/Counterclaim Plaintiffs also allege in Count IV that to their detriment, they "reasonably relied" upon GMAC's aforementioned representations to process their loan applications; in particular, by not working with other potential lenders for their development projects. *Id.* at 15 ¶ 38. Based upon the foregoing allegations, the Court finds that Defen-

dants/Counterclaim Plaintiffs have sufficiently alleged facts to support their claims for promissory estoppel in Count IV of the Amended Counterclaim and, as such, the Motion to Dismiss Count IV of the Amended Counterclaim must be denied.

For all of the above reasons, GMAC's Motion to Dismiss the Amended Counterclaim will be denied in its entirety.

### III. Gleichman's Motion for Judgment as to Count II of the Complaint

Gleichman has moved for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), as to Count II of GMAC's Complaint which seeks relief from Gleichman in her personal capacity for breach of contract. *See* Motion for Judgment at 1–2. Gleichman argues that the allegations of GMAC's Complaint, which attempt to hold Gleichman personally liable for breach of the Loan Contract because Greyrock's corporate veil was pierced, are inadequate as a matter of law. *Id.* at 3–5; *see also Theberge v. Darbro, Inc.*, 684 A.2d 1298, 1301 (Me.1996). The Court finds that Gleichman's argument lacks merit.

The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion to dismiss. *See* Fed.R.Civ.P. 12(c) and 12(b)(6); *Preyer v. Dartmouth College*, 968 F.Supp. 20, 23 (D.N.H.1997). In both instances, the court's inquiry is not whether the plaintiff will ultimately prevail on her claims, but rather, the question before the court is whether the plaintiff is entitled to offer evidence to support her claims. *Preyer*, 968 F.Supp. at 23. In making this inquiry, the court must accept as true all of the factual allegations of the complaint, and draw all reasonable inferences from those facts in a manner most favorable to complainant. *Garita Hotel Ltd. Partner-*

ship v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir.1992). Indeed, great specificity is not required to survive a 12(c) motion; "it is enough for a plaintiff to sketch an actionable claim by means of a generalized statement of facts." *Preyer*, 968 F.Supp. at 23 (citations omitted). In sum, a court may not render judgment on the pleadings unless it appears that the plaintiff could prove no set of facts that would entitle him to relief. *Id.; Santiago de Castro v. Morales Medina*, 943 F.2d 129, 130 (1st Cir. 1991).

In this action, whether Gleichman will be personally liable for breach of the Loan Contract will depend upon whether Greyrock's corporate veil was pierced. Thus, a discussion of the corporate-veil doctrine is appropriate.[7] It is well established in Maine that "[a]s a matter of public policy, 'corporations are separate legal entities with limited liability.'" *Johnson v. Exclusive Props. Unlimited*, 720 A.2d 568, 571 (Me.1998) (quoting *Theberge*, 684 A.2d at 1301). "As such, courts are generally reluctant to disregard the legal entity and will cautiously do so only when necessary to promote justice." *Id.* (quoting *Anderson v. Kennebec River Pulp & Paper Co.*, 433 A.2d 752, 756 n. 5 (Me. 1981)). A court, however, may "pierce a corporate veil when equity so demands, and may disregard the corporate entity 'when used to cover up fraud or illegality, or to justify a wrong.'" *Id.* (quoting *Maine Aviation Corp. v. Johnson*, 160 Me. 1, 196 A.2d 748, 750 (1964)). "An examination of the different tests courts apply suggests two common elements that a plaintiff must establish before a court will disregard the corporate entity: (1) some manner of dominating, abusing, or misusing the corporate form; and (2) an unjust or inequitable result that would arise if the court recog-

---

7. Although the Loan Contract, by its express terms, is governed by Pennsylvania Law, the determination of whether Gleichman (a Maine resident) used Greyrock (a Maine corporation) as her "alter ego" is governed by Maine law. *See Wadsworth, Inc. v. Schwarz–*

Nin, 951 F.Supp. 314, 320 (D.P.R.1996) ("when the subject is liability of officers and directors for their stewardship of the corporation, the law presumptively applied is the law of the place of incorporation").

nized the separate corporate existence." *Johnson,* 720 A.2d at 571.

▉ Count II of GMAC's Complaint alleges that Gleichman is the sole owner and member of Greyrock, and that Greyrock is a limited liability corporation organized and existing under the laws of Maine. Complaint at 2, 12 ¶¶ 3, 12, 41. The Complaint further alleges that on April 20, 1999, Gleichman, on behalf of Greyrock, executed the Loan Contract with GMAC. *Id.* at 6 ¶ 18. Yet, on May 10, 1999, the Complaint alleges that Gleichman informed GMAC that Greyrock "would not perform its contractual obligations under the [Loan Contract] and would not proceed to [c]losing on the Loan." *Id.* at 10 ¶ 33. Thereafter, Gleichman told Bechen that she intended to dissolve Greyrock. *Id.* at 12 ¶ 42. Furthermore, GMAC alleges that if Gleichman were permitted to dissolve Greyrock, GMAC would be deprived of its ability to recover damages against Greyrock for its breach of the Loan Contract. *Id.* at 12 ¶ 42. Finally, GMAC alleges that Gleichman "treated Greyrock as her alter ego and misused the limited liability company form to unjustly avoid liability for her actions...." *Id.* at 12 ¶ 43.

As stated above, in order for the corporate veil to be pierced, two factors must be proven: (1) a misuse of the corporate form; and (2) an inequitable result if the court recognizes the corporate form. *See Johnson,* 720 A.2d 571. Here, GMAC has alleged that Gleichman, after Greyrock's alleged wrongful repudiation of the Loan Contract, announced her intention to dissolve Greyrock; the Court finds this allegation, although somewhat conclusory, sufficient to demonstrate Gleichman's misuse of Greyrock's corporate form. Furthermore, GMAC has alleged that if the Court does not pierce the corporate veil of Greyrock, GMAC will be deprived of its ability

to recover damages as a result of the breach of the Loan Contract. Therefore, GMAC has alleged that an inequitable outcome will result if the Court recognizes Greyrock's corporate form.

As stated above, for a claim to survive a 12(c) motion, it is enough for a plaintiff to set forth an actionable claim through a generalized statement of facts. *Preyer,* 968 F.Supp. at 23. When GMAC's allegations are viewed in a light most favorable to it as pleader, it is apparent that Gleichman is not entitled to judgment on the pleadings because GMAC could prove a set of facts that would entitle it to relief under Count II of the Complaint. *See Santiago de Castro,* 943 F.2d at 130.[8] Consequently, Gleichman's Motion for Judgment will be denied.

### IV. *GMAC's Motion for Summary Judgment as to Count I of the Complaint*

GMAC argues that it is entitled to summary judgment as to Count I of its Complaint because Greyrock anticipatorily breached the Loan Contract in two ways: (1) by selling one-half of its interest in the Greyrock Development to an outside investor before the closing date, and (2) by plainly stating to Bechen that it would not close on the terms of the Loan Contract. *See* Complaint Summary Judgment at 4–5. Thus, GMAC maintains, there is no genuine issue of material fact that Greyrock breached the Loan Contract and GMAC is entitled to judgment as a matter of law. *Id.* at 7.

Greyrock argues in opposition, *inter alia,* that it was GMAC, not Greyrock, who breached the Loan Contract. *See* Defendant Greyrock's Objection to Plaintiff's Motion for Summary Judgment on Count I of the Complaint at 2–4 ("Objection to

---

**8.** Gleichman's reliance on *Theberge* in support of her argument here suffers from the same defect as did GMAC's reliance on *Lynch* previously. Namely, the procedural posture of the present case is entirely different from that of the posture in *Theberge.* In *Theberge,* the trial court rendered its decision following a nonjury trial. Here, the Court is faced only with a motion for judgment on the pleadings. Therefore, the *Theberge* decision has little bearing on this Court's analysis.

Complaint Summary Judgment") (Docket No. 41). Specifically, Greyrock argues that GMAC failed to secure the necessary guaranty insurance from AIG as required by the Loan Contract. *Id.* at 4. Therefore, GMAC failed to demonstrate that it was ready, willing, and able to perform its obligations under the Loan Contract and, consequently, Greyrock was relieved of its obligation to perform under the Loan Contract. Thus, summary judgment in favor of GMAC is inappropriate. *Id.*

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). Once the moving party has come forward identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any" which "it believes demonstrate the absence of a genuine issue of material fact," the adverse party may avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986).

The trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court will not, however, pay heed to "conclusory allegations, improbable inferences [or] unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). In ruling on a motion for summary judgment, the role of the trial judge is not to "weigh the evidence to determine the truth of the mat-

ter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Here, the Loan Contract (unlike the Terms Sheets discussed above) expressly provides that it is to be governed by Pennsylvania law. *See* Plaintiff's Statement of Material Facts as to Which There is No Genuine Dispute, With Respect to the Breach of Contract Claim in Count I of the Complaint, Exhibit 12 ¶ 17 ("Complaint Statement of Material Facts") (Docket No. 31).[9] Therefore, the Court will examine Pennsylvania substantive law in order to determine whether GMAC is entitled to summary judgment on its breach of contract claim.

■ Under Pennsylvania Law, in order for a plaintiff to succeed on a claim for breach of contract the following must be demonstrated: (1) the existence of a valid and binding agreement; (2) the agreement's essential terms; (3) that the plaintiff complied with those terms; (4) that the defendant breached a duty imposed by the agreement; and (5) that damages resulted from the breach. *See Gundlach v. Reinstein*, 924 F.Supp. 684, 688 (E.D.Pa.1996), *aff'd*, 114 F.3d 1172 (3d Cir.1997). Because the Court finds that genuine issues of material fact exist as to whether Greyrock breached the Loan Contract, it is unnecessary for the Court to discuss the remaining factors of the five-part test.[10]

■ Although there is no dispute that Greyrock informed GMAC that it would not go through with the Loan Contract, the exact reason for Greyrock's refusal proceed to closing is a topic of considerable dispute. *See* GMAC's Complaint Statement of Material Facts at 5 ¶ 16;

9. *See also* GMAC's Statement of Material Facts as to Which There is No Genuine Issue With Respect to the Amended Counterclaim, Exhibit 5 ¶ 17 ("Amended Counterclaim Statement of Material Facts") (Docket No. 33).

10. GMAC argues that the Loan Contract was a valid, binding contract between itself and Greyrock. *See* Complaint Motion for Summary Judgment at 3–4. The Court will assume for purposes here only that the Loan Contract did, in fact, create contractual obligations between the parties.

Defendants' and Counterclaim Plaintiffs' Statement of Material Facts in Support of Defendants' and Counterclaim Plaintiffs' Motion for Summary Judgment at 6 ¶ 16 ("Defendants/Counterclaim Plaintiffs' Statement of Material Facts") (Docket No. 37). In particular, Greyrock maintains that it refused to proceed to closing on the Loan Contract because GMAC failed to secure the guaranty insurance necessary for the Greyrock Development. *See* Greyrock's Objection to Complaint Summary Judgment at 4; Defendants/Counterclaim Plaintiffs' Statement of Material Facts at 10 ¶ 42, 12 ¶ 51, 14–15 ¶¶ 60–63; Second Affidavit of Pamela Gleichman at 6 ¶ 24, 7 ¶¶ 29–32, 10 ¶ 39 ("Gleichman Aff. II") (Docket No. 39). Conversely, GMAC claims that Greyrock refused to close on the Loan Contract because Greyrock was experiencing financial difficulties. *See* Complaint Summary Judgment at 4–5; Complaint Statement of Material Facts, Exhibit 1, Affidavit of Steven Bechen at 7 ¶ 20, 8 ¶¶ 22–24. There is credible evidence in the record to sufficiently support either argument.

It is well established that in ruling on a motion for summary judgment, the role of the trial judge is not to "weigh the evidence to determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. After careful review of the evidence, genuine issues of material fact exist as to whether Greyrock breached the Loan Contract. Thus, GMAC's Complaint Motion for Summary Judgment must be denied.[11]

### V. *GMAC's Amended Counterclaim Motion for Summary Judgment*

#### A. *Count I*

GMAC argues that it is entitled to summary judgment on Count I of the Amended Counterclaim because the language of the Greyrock Term Sheet plainly provides that Greyrock's Good Faith Deposit would be returned only if the construction loan for the Greyrock Development was not approved. Here, GMAC did approve a construction loan for the project and, as a result, GMAC maintains that it is entitled to summary judgment as a matter of law. Amended Counterclaim Motion for Summary Judgment at 6–8.

In opposition, Greyrock argues that the Greyrock Term Sheet's "non-refundability" clause is, in fact, an ambiguously drafted forfeiture clause. Therefore, the clause should be construed against GMAC, as the drafter of the language, and summary judgment is inappropriate. *See* Counterclaim Plaintiffs' Objection to Counterclaim Defendant's Motion for Summary Judgment on Counts I–IV of Amended Counterclaim at 6 ("Objection to Amended Counterclaim Summary Judgment") (Docket No. 44); Amended Counterclaim Motion for Summary Judgment at 26–29.

■■■ "The interpretation of an unambiguous contract is a question of law, ... whereas the interpretation of an ambiguous contract involves questions of fact...." *U.S. ex rel. Rural Housing Service v. Wheeler*, 726 A.2d 1264, 1266 (1999) (citations omitted). "If the contract language is ambiguous or uncertain, its interpretation is a question of fact to be determined by a factfinder." *Spottiswoode v. Levine*, 730 A.2d 166, 172 (1999).

In this action, the operative language of the Greyrock Term Sheet provides as follows:

> Upon acceptance of this Term Sheet, [Greyrock] shall pay to [GMAC] a Good Faith Deposit in the amount of $125,000. The Good Faith Deposit will be applied towards third-party reports, a $5,000 un-

11. The Court's determination that genuine issues of material fact exist with regard as to whether Greyrock or GMAC, or neither party, breached the Loan Contract necessarily precludes the Court from rendering summary judgment in favor of Defendants/Counterclaim Plaintiffs on their Motion for Summary Judgment (Docket No. 36) with respect to Count I of the Complaint. As such, Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment as to Count I of GMAC's Complaint will be denied.

derwriting fee, and a non-refundable fee of $25,000. If the Construction Loan is not approved in a form substantially similar to this preliminary letter of intent, the Good Faith Deposit will be returned to [Greyrock] less the underwriting fee, the non-refundable fee, and all-out-of-pocket costs incurred by [GMAC]. If the Loan is approved the non-refundable fee shall be applied to the commitment fee.

Amended Counterclaim Statement of Material Facts, Exhibit 3 at 3.

 The Court finds that the foregoing language is ambiguous. The language is ambiguous because it is unclear as to what becomes of the Good Faith Deposit in the event that a construction loan is approved but the parties do not close on the loan. The final sentence of the Greyrock Term Sheet contemplates that upon the approval of a construction loan the Good Faith Deposit is to be applied to the construction loan's "commitment fee"; under the language of the Greyrock Term Sheet, however, the "commitment fee" becomes due only at closing. Amended Counterclaim Statement of Material Facts, Exhibit 3 at 2. Therefore, because in an action such as this, where a construction loan for the project is approved but the parties never close on the loan, there is an ambiguity from the language of the Greyrock Term Sheet as to what is to become of the Good Faith Deposit. Because the Court finds that the language of the Greyrock Term Sheet is

ambiguous, the language must be interpreted by a factfinder. Consequently, GMAC's Motion for Summary Judgment as to Count I of the Amended Counterclaim must be denied.[12]

### B. *Count III*

 GMAC has moved for summary judgment as to Terrace Springs' and Armstrong Square's ("Counterclaim Plaintiffs") breach of contract claims in Count III of the Amended Counterclaim. Specifically, GMAC moves for summary judgment on the ground that the Terrace Springs and Armstrong Square Term Sheets gave GMAC the "sole discretion" to determine whether it would finance Counterclaim Plaintiffs' development projects. Amended Counterclaim Summary Judgment at 12–13. Therefore, GMAC argues, because it had sole discretion as to whether it would finance Counterclaim Plaintiffs' development projects, it cannot be liable to Counterclaim Plaintiffs for breach of contract as a result of its exercise of that discretion. *Id.*

Counterclaim Plaintiffs argue in opposition that the Terrace Springs and Armstrong Square Term Sheets do not provide GMAC with "unlimited discretion" to avoid all of its contractual obligations. Objection to Amended Counterclaim Motion for Summary Judgment at 10–12. Therefore, Counterclaim Plaintiffs argue, factual questions exist as to whether GMAC breached the Terrace Springs and Arm-

---

**12.** The Court's decision to deny GMAC's motion for summary judgment as to Count I of the Amended Counterclaim also requires the denial of GMAC's motion for summary judgment as to Greyrock's claim for unjust enrichment in Count II of the Amended Counterclaim. "[U]njust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Nadeau v. Pitman*, 731 A.2d 863, 866 (Me. 1999). "The existence of a contractual relationship, precludes recovery on a theory of unjust enrichment." *Id.* (quotations omit-

ted). Here, although the Greyrock Term Sheet appears to constitute a contract between the parties, if at trial it is found that such a contractual relationship does not exist, then Defendants/Counterclaim Plaintiffs' allegations regarding unjust enrichment may form an alternate basis for recovery.

Additionally, because the language of the Greyrock Term Sheet is ambiguous, Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment as to Count I of the Amended Counterclaim, for all of the same reasons as set forth in this decision, must also be denied. *See* Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment at 25.

strong Square Term Sheets and the Motion for Summary Judgment must be denied.

Both the Terrace Springs and Armstrong Square Term Sheets provide the following:

> [GMAC] would be willing to consider placing a combination construction/permanent loan as indicated in this "Term Sheet." [GMAC's] decision will be based at its sole discretion upon the representations and information supplied by [Counterclaim Plaintiffs] and [GMAC's] completion of due diligence. [GMAC] is pleased to extend to you the following proposed terms and conditions for the combination construction/permanent loan that would be administered by [GMAC].

GMAC's Amended Counterclaim Motion for Summary Judgment, Exhibits B at 1, E at 1. Pursuant to above language, it appears that GMAC had made an offer to Counterclaim Plaintiffs to "consider" placing a construction loan based upon the terms provided for in those agreements. However, both Term Sheets do provide that upon execution of the Term Sheets, Counterclaim Plaintiffs "acknowledges that [they are] working solely with [GMAC] to procure combination construction/permanent financing...." *Id.*

Based upon the foregoing, the Court cannot discern from the face of the Term Sheets whether the parties entered into a contractual relationship. It appears that the parties did have an agreement whereby GMAC promised, at the very least, to "consider" financing Counterclaim Plaintiffs' projects. And in return, Counterclaim Plaintiffs' promised to deal exclusively with GMAC. Nevertheless, because of the "sole discretion" language in both the Terrace Springs and the Armstrong Square Term Sheets, it is unclear whether GMAC actually intended to be contractually bound to Counterclaim Plaintiffs. Therefore, because the interpretation of ambiguous contractual language involves questions of fact, *see U.S. ex rel. Rural Housing Service*, 726 A.2d at 1266, the Court finds that GMAC's Motion for Summary Judgment as to this count of the Amended Counterclaim must be denied.[13]

---

13. Because the Court has determined that factual questions exist with regard to the proper interpretation of the Terrace Springs and Armstrong Square Terms Sheets, the Court finds that it must also deny GMAC's Motion for Summary Judgment with respect to Defendants/Counterclaim Plaintiffs' claims for promissory estoppel in Count IV of the Amended Counterclaim. Maine has adopted the Restatement formulation of the doctrine of promissory estoppel. *Daigle Commercial Group, Inc.*, 734 A.2d at 672. Under the doctrine of promissory estoppel, a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." *Id.;* Restatement (Second) Contracts § 90(1) (1981). Promissory estoppel applies to promises that are otherwise unenforceable. *Panasonic Communications & Sys. Co. v. State of Maine*, 691 A.2d 190, 196 (Me.1997).

Here, because factual questions exist as to whether the Terrace Springs and Armstrong Square Term Sheets are enforceable as contracts, the Court cannot determine, as a matter of law, whether Defendants/Counterclaim Plaintiffs are entitled to relief under a theory of promissory estoppel. Because a determination concerning the enforceability of the Term Sheets necessarily impacts on the availability of other relief apart from the expectations of the parties.

Alternatively, and aside from the interrelatedness of the breach of contract claims with the claims for promissory estoppel, the Court finds that factual questions exist as to whether GMAC, as promisor, through the language of the Terrace Springs and Armstrong Square Term Sheets themselves, *induced* Counterclaim Plaintiffs to rely, to their detriment, on GMAC's promise that it would consider financing the development projects. *See* Objection to Amended Counterclaim Motion for Summary Judgment at 10; GMAC's Amended Counterclaim Motion for Summary Judgment, Exhibits B at 1, E at 1. For the foregoing reasons, GMAC's Motion for Summary Judgment as to Count IV of the Amended Counterclaim will be denied.

VI. *Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment*

█ Defendant/Counterclaim Plaintiff Gleichman has moved for summary judgment with respect to Count II of the Complaint on the ground that there is no factual dispute that she did not abuse the corporate form of Greyrock. Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment at 21–22. As such, Gleichman argues that she cannot be exposed to personal liability for the alleged breach of the Loan Contract as a matter of law. *Id.*

GMAC argues in opposition, *inter alia,* that there are numerous factual issues present with respect to its claim in Count II of the Complaint. *See* Opposition of Plaintiff [GMAC] to Defendants and Counterclaim Plaintiffs' Motion for Summary Judgment and Incorporated Memorandum of Law at 19. Therefore, summary judgment on this count is inappropriate. *Id.*

As discussed above, under Maine law, "[a]s a matter of public policy, corporations are separate legal entities with limited liability." *Johnson,* 720 A.2d at 571 (quotations omitted). "As such, courts are generally reluctant to disregard the legal entity and will cautiously do so only when necessary to promote justice." *Id.* A court may, however, "pierce a corporate veil when equity so demands, and may disregard the corporate entity when used to cover up fraud or illegality, or to justify a wrong." *Id.* (quotations omitted). "An examination of the different tests courts apply suggests two common elements that a plaintiff must establish before a court will disregard the corporate entity: (1) some manner of dominating, abusing, or misusing the corporate form; and (2) an unjust or inequitable result that would arise if the court recognized the separate

corporate existence." *Johnson,* 720 A.2d at 571.

Presently, the Court finds that GMAC has produced sufficient evidence of Gleichman's alleged improper use of Greyrock's corporate form to justify a denial of Gleichman's motion for summary judgment as to this count. Some of those facts are as follows: (1) Greyrock was undercapitalized upon its formation (GMAC's Statement of Material Facts (Docket No. 31), Exhibit 3 at 8.1, Exhibit 2, Gleichman Dep. at 73–74); (2) Greyrock's Good Faith Deposit was paid for by Landmark, a company controlled by Gleichman (GMAC's Statement of Material Facts, Exhibit 2, Gleichman Dep. at 241); and (3) the methods by which Greyrock distributed funds to Gleichman and the Promenade Trust (GMAC's Statement of Material Facts, Exhibit 2, Gleichman Dep. at 155). Because the Court finds there to be genuine issues of material fact as to whether Gleichman abused the corporate form of Greyrock, summary judgment on this count of the Complaint will be denied.[14]

## CONCLUSION

Accordingly, the Court **ORDERS** that GMAC's Motion to Dismiss, and Gleichman's Motion for Judgment be, and they are hereby, **DENIED.** Furthermore, the Court concludes that there are genuine issues of material fact with regard to GMAC's Complaint Motion for Summary Judgment and Counterclaim Motion for Summary Judgment. Hence, the Court **ORDERS** that GMAC's Complaint Motion for Summary Judgment and Counterclaim Motion for Summary Judgment be, and they hereby are, **DENIED.** Finally, the Court concludes that there are genuine issues of material fact with regard to D

14. The Court also notes that Defendants/Counterclaim Plaintiffs have moved for summary judgment with respect to GMAC's unjust enrichment claim in Count III of the Complaint. Yet, for the same reasons set forth above with regard to GMAC's Amended Counterclaim Motion for Summary Judgment

as to Count III of the Amended Counterclaim, the present motion for summary judgment must be denied. Because disputed factual issues exist with regard to the Loan Contract, the Court cannot determine, as a matter of law, whether GMAC will be entitled to relief under a theory of unjust enrichment.

efendants/Counterclaim Plaintiffs' Motion for Summary Judgment. Hence, the Court **ORDERS** that Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment be, and it is hereby, **DENIED.**